ISAAC WATTS v. MICHAEL KAVANAGH, AND TRUSTEE, H. MERRILL.

*Statute of Limitations. Trustee Process. Principal and Agent. Book Account. Costs.*

The fact that a debtor, who has been absent from the state more than six years, has had during that time, within the knowledge of the creditor, funds in the hands of a third person liable to be reached by the trustee process, will not bring the case within the operation of the statute of limitations, if the debt does not exceed ten dollars.

*Quere,* whether it would have that effect if the debt did exceed ten dollars.

Though in certain cases of long continued agency, notice of the revocation thereof is necessary to prevent the principal from being liable for the acts of the agent after his agency has been revoked, to those who contract with him in good faith upon the credit of his principal, yet this rule does not apply to cases where the agent had only a special authority to do a particular act or make a particular contract.

In book account the county court has a discretionary power to deny full costs to the plaintiff if he fails to sustain his whole claim.

BOOK ACCOUNT. The facts in the case are sufficiently stated in the opinion of the court.

*M. Hale,* and *Wing, Lund & Taylor,* for the plaintiff.

*Bliss N. Davis,* for the defendant.

PECK, J. This is an action on book, tried in the county court on a special report of the auditor. The plaintiff's account on which the questions arise, consists of items numbered from 1 to 168. The defendant presented no account, and the plaintiff's account contains no credits, and no payments appear to have been made by the defendant.

The county court decided that the plaintiff was entitled to recover the item of $1.75 only, being item No. 7. To this decision the plaintiff excepts and claims to recover the whole 168 items.

As to the first six items the auditor finds that they are for articles delivered to the defendant before he left the country, and

Watts v. Kavanagh, and Trustee.

as to the 7th item he finds that the plaintiff before the defendant left agreed to pay that sum, $1.75, for the defendant, but that he did not pay it till November 24th, 1852; so that this item did not accrue until November 24th, 1852. It appears that the defendant left the state and went to California in October, 1851, and has never returned. By reference to the account it appears that the first six items accrued between February 3rd, 1851, and October, 1851, when the defendant left the state. The only objection to these items is the statute of limitations, which is also relied on as to the seventh item. The action was commenced as appears by the writ November 19th, 1857, so that as to the seventh item the action was commenced within six years from the time it accrued, as it must be taken to have accrued at the time the plaintiff paid that sum for the defendant, and not at the time he agreed to pay it. As to the first six items the action was commenced more than six years after the items accrued. It is claimed by the plaintiff that the absence of the defendant from the state saves the six items from the operation of the statute; and by the defendant that he had known property within the state during his absence and residence out of the state, which might have been attached, and that therefore they are barred.

On this point the auditor reports that when the defendant left for California he left in Merrill's hands (who lived in this state a mile from the plaintiff) $300 or $400 to be by him taken care of, and that the rest of his property he took with him; that after he got to California he sent to Merrill about $1000 more from time to time, the last being in 1853, to be by him managed, and that these funds Merrill kept loaned out, and that this was known to the plaintiff during the defendant's absence.

Were these funds thus situated "known property" "which could by the common and ordinary process of law be attached," within the meaning of the statute? These funds were not such unless the trustee process is "the common and ordinary process of law" within the meaning of the statute, which in this case it is unnecessary to decide; for conceding that such process is within the meaning of the statute, the plaintiff's claim did not amount to $10 until the seventh item accrued, which was within six years next before the suit was commenced; so that these six

items until then could not have been recovered or collected by trustee process. In order to collect a debt by trustee process the plaintiff's debt and the effects or credits in the possession of the trustee must each exceed the sum of $10. This is so provided by the 72nd section of the trustee act, (Comp Stat. p. 265.) This fund, in order to bring the case within that provision of the statute of limitations, must be such as could have been attached on this debt. It being exempt from attachment on this debt by reason of the plaintiff's debt being under $10, it is the same in effect as if it had been exempt by reason of the fund in the possession of the trustee being less than $10, and could have no more effect to cause the statute of limitation to run against the claim than would the defendant's wearing apparel, his only cow, or any other property exempt by law from attachment and levy of execution.

The plaintiff is therefore entitled to recover the first six items of his account, together with the seventh item.

The residue of the items claimed by the plaintiff were furnished by the plaintiff to the defendant's minor daughter, Ann, during that portion of the time she lived in the plaintiff's family, between August, 1852, when the plaintiff's wife died, and February, 1856, when Ann ceased to reside in the plaintiff's family, she having gone to reside in his family in 1849, when about nine years old and resided there till 1856, laboring in the family, going to school as children of her age usually do, being clothed and boarded by the plaintiff as one of his own children. The auditor also finds that up to August, 1852, when the plaintiff commenced charging for what he furnished, there was no expectation of any charge or payment on either side, and that the plaintiff made no claim on trial for anything furnished prior to that time. Nothing need be said of the last four items which are for board, and are disallowed by the auditor, as the auditor finds as to these items that Ann's labor was a fair equivalent for her board. The one hundred sixty-eight items (except the first seven,) are allowed by the auditor subject to the opinion of the court upon the facts reported. It appears that in August, 1852, the plaintiff concluded not to keep Ann any longer under that arrangement, and commenced

charging without any new contract with the defendant or with any one authorized to act for him, and without giving any notice to the plaintiff of his change of purpose, or to Merrill the plaintiff's agent, or to Ann till after she left his family in 1856. Whether the original contract was as the defendant claimed, that the plaintiff adopted the child as his own till she should become eighteen years old, or as the plaintiff claimed, " that there was no binding agreement for her to stay or for him to keep her longer than it should suit the plaintiff and Ann," some such notice was necessary to entitle the plaintiff to charge for her support. The report shows that the defendant remained in California till sometime in 1853, writing home frequently to Merrill and to his children, when he left and went to Australia, and that the plaintiff took no pains to learn the defendant's resi- dence in California ; that Merrill was the general agent of the defendant, and that he was guardian of this child from February, 1852 ; but it appears that the plaintiff did not know he was her guardian. Merrill it appears all this time supposed that Ann was living in the plaintiff's family under the original contract.

But it is claimed the notice the plaintiff gave to Mrs. Blanchard in August, 1852, and what she said to him on that occasion, gave him a right to make these charges. The auditor finds that Mrs. Blanchard, who was an aunt of this child, (the mother of the child having then recently deceased and the defendant's family being broken up,) made the original arrangement with the plaintiff, or his wife by his consent and authority, in relation to the child living in the plaintiff's family ; that this was without any special authority from the defendant, but that the defendant soon after, and while he resided in Peacham where the plaintiff resided, consented to it. In August, 1852, the plaintiff gave Mrs. Blanchard notice that he did not wish to keep the child any longer, and that she said he had better keep her till her father came in the fall or winter, and that he would then find a place for her ; that her father would have to pay some one, and he might as well pay him as any one. But the auditor finds she had no authority or agency from the defendant after she made the original arrangement with the plaintiff. The plaintiff's counsel claim that the defendant is bound by this act of Mrs.

Watts *v.* Kavanagh, and Trustee.

Blanchard on the ground that the plaintiff had a right to presume her agency continued till he had notice to the contrary.    There are cases of a long continued agency where notice of a revocation of the agency is necessary, and where without such notice there remains such an apparent agency after the revocation, as will bind the principal by the subsequent acts of the agent as to one who *bona fide* contracts with him on the faith of his agency. But this principle does not apply to a case like the present, where the supposed agent at most had originally only a special authority to do a particular act or make a particular contract.    The plaintiff was not warranted in relying on her agency three years after she made the original contract, and this, too, without any inquiry as to her authority ; nor does it sufficiently appear that she in this instance, in August, 1852, assumed to act as the agent of the defendant, or that the plaintiff relied on what she said as being said in that capacity.    These items must be disallowed.

This disposes of the plaintiff's exceptions.    The defendant excepted to the decision of the county court in allowing full costs to the plaintiff and refusing costs to the defendant, as the plaintiff failed to recover on a portion of his account.    It is claimed by the plaintiff that the act of 1856 relating to the apportionment of costs, does not apply to this case.    We are not prepared to say that that statute does not apply to an action on book, and we think without that statute the county court has a discretionary power to apportion the costs at least so far as to deny full costs to the plaintiff.    It does not appear, however, that the county court in overruling the defendant's motion to apportion costs, put the decision on the ground of a want of power, and in the absence of any statement of facts or grounds on which this decision of the county court was made, this exception must be overruled.

Judgment reversed, and judgment for the plaintiff for the first seven items in his account and interest thereon with costs.