JACKSONVILLE TERMINAL COMPANY, A CORPORATION, *Plaintiff in Error*, v. ALEXANDER SMITH, *Defendant in Error*.

## Opinion Filed January 20, 1914.

1. A case should not be taken from the jury unless the conclusion follows from the evidence as matter of law that no recovery can be lawfully had upon any view taken of facts that the evidence tends to establish.

2. Where it is alleged that a defendant railroad company "failed and neglected to equip one of its cars with an automatic coupler which would couple automatically by impact, without the necessity of men going in between the cars to be coupled," and that plaintiff was injured "while holding or attempting to hold the coupling appliances of said car in position with his hands to effect said coupling," and the evidence shows the coupling could not be made automatically by impact, because the buff on the car being low interfered with the coupling, there is no fatal variance between the allegations and the proofs.

3. A power of attorney not coupled with an interest in the subject matter though under seal, may be revoked by parol; and such revocation is binding on the agent and on third persons who have notice of it, or have such knowledge as would reasonably put them upon enquiry that would disclose revocation.

4. When a power of attorney is given, and the instrument vests in the agent no interest in the subject on which the power is to operate, but an interest of the agent therein is to accrue

by the exercise of the power, the interest and the power are not united so as to make the power coupled with the interest.

5. Authority to compromise a claim does not of itself convey an interest in the claim.

6. Where notice of a revocation of a power of attorney may be inferred, evidence of an effective parol revocation of the power is admissible.

Writ of Error to Circuit Court for Duval County; Daniel A. Simmons, Judge.

Judgment affirmed.

*John E. Hartridge,* for plaintiff in error.

*Carter & McCollum,* for defendant in error.

WHITFIELD, J.—The declaration is in two counts, only the second of which alleges facts showing the cause of action arose while the common carrier defendant was engaged and the plaintiff employee of the defendant was employed in interstate commerce. In the second count it is alleged that the plaintiff employee was employed in coupling cars used by the defendant engaged in interstate commerce; that the defendant company had failed and neglected to equip one of the cars to be coupled at the end thereof, with an automatic coupler, which would couple automatically by impact, without the necessity of men going in between the cars to be coupled, to make the coupling, as it was required to do by the laws in such cases made and provided; and while so engaged as aforesaid in making said coupling, and while plaintiff was attempting to adjust with his hand the knuckle of the

said coupler on the said end of the said car, to effect the coupling thereof, and while holding or attempting to hold the coupling appliances of said car in position with his hand to effect said coupling, on account of the said negligence of defendant in having said defective coupling then and there, plaintiff was injured and claims damages. Trial was had on pleas of not guilty and "that since the institution of this suit and before the filing of this plea, the defendant satisfied and paid the plaintiff's claim and demand in full, and was acquitted of any further obligations and demands on account thereof by the plaintiff." A writ of error was taken to a judgment for the plaintiff. There is nothing to indicate that the verdict was not found under the second count of the declaration to which the facts in evidence were applicable.

The plaintiff testified to facts tending to show the defendant employer was engaged and the plaintiff employee was employed in interstatte commerce at the time of the alleged injury. He also testified that the cars would not couple; that "the buff was down;" "so we couldn't open the drawhead to connect the coupling;" "the coupling apparatus of the two cars would not connect with this buff;" "in going between these cars to hold up this buff, why the buff was down over the knuckle and in holding it up, why the drawhead of the engine come in" and caught the plaintiff's hand. Plaintiff then rested, and the defendant moved for a directed verdict in its favor "on the ground that there was no evidence to show that there was anything wrong about the coupling, or that it was out of repair or unsafe." This motion was denied and the defendant excepted.

A case should not be taken from the jury unless the conclusion follows from the evidence as matter of law that no recovery can be lawfully had upon any view

taken of facts that the evivdence tends to establish. See Gardner v. Michigan Cent. R. Co., 150 U. S. 349, 14 Sup. Ct. Rep. 140; Kreigh v. Westinghouse, Church, Kerr & Co., 214, U. S. 249, — Sup. Ct. Rep. —; Delk v. St. Louis & S. F. R. R. Co., 220 U. S. 580, 31 Sup. Ct. Rep. 617; Hammond v. Jacksonville Electric Co., decided at the last term.

The declaration alleges that the defendant "failed and neglected to equip one of its cars with an automatic coupler which would couple automatically by impact, without the necessity of men going in between the cars to be coupled," and that plaintiff was injured "while holding or attempting to hold the coupling appliances of said car in position with his hand to effect said coupling." There was evidence that tended to prove the engine and car would not couple automatically by impact because the buff was low and interfered with the coupling; that the coupling apparatus of the two cars would not connect because of the buff being low, and that the plaintiff was injured while holding up the buff so the coupling could be made automatically by impact. Whether the automatic coupler was inherently defective, or whether its automatic operation was interfered with by the buff which "hung low," the evidence shows the injury was sustained while the plaintiff was "holding or attempting to hold the coupling appliances of said car" as alleged so that the coupling could be made, and it was the duty of the defendant to have its "coupling appliances" at least in reasonably safe condition. Even if the condition of the coupler with reference to the buffer was not a violation of the Federal Safety Appliance Act so as to make contributory negligence no defense under Section 3 of the Federal Employees Liability Act, the evidence adduced tended to show the plaintiff was

injured as a proximate result of a defective buffer inter-
fering with a coupling while plaintiff was employed by
the defendant carrier in interstate commerce. This
would justify a finding of liability against the defendant
under Sections 1 and 3 of the Federal Employees Lia-
bility Act even if there was evidence of contributory neg-
ligence to reduce the amount of recovery.

There was no fatal variance between the allegations
and the evidence as to the nature of the defendant's
delict or as to the proximate cause of the injury. If the
condition of the buffer on the car engaged in interstate
commerce prevented the coupler from automatically
coupling by impact without the necessity of men going
between the ends of the car and the engine to make the
coupling, then the coupling was not in condition for safe
and practical use as contemplated and required by the
statute. It is in effect alleged that the coupling ap-
pliances were not in proper condition, and there is evi-
dence that the buffer on the car hung down and prevented
the coupler on that car from automatically coupling by
impact without human aid, which was a proximate cause
of the injury alleged.

There was no error in denying the motion for a di-
rected verdict for the defendant.

In support of the plea of not guilty the defendant ad-
duced testimony that the coupler on the car was in per-
fect condition; that there was not a defect to the draw-
head on either the engine or the car; that the buffer is
not a part of the coupler and had nothing to do with
the coupler and it performs no office in the coupling of
a car; that there "was some little difficulty in making
the coupling;" the men "were holding up the buffer, due
to a low place in the track so we could make the coup-
ling;" they were holding up the buffer "because they

couldn't make the coupling;" the couplings "on the engine and the car wouldn't couple by impact automatically" * * * "at that particular place." The jury could lawfully find against the defendant's plea of not guilty on the evidence.

Under the plea of satisfaction and acquittance, evidence was introduced to show that the plaintiff had by an instrument under seal authorized one Bowman "to settle the claim with said Company by compromise or in any manner he may think fit;" "and the release the said company from all further liability if settlement is made." The agent was to have "one-third of all he received for his services." It was further shown that the company settled with the agent under the power of attorney held by him, and received from him an acquittance in full on March 13, 1913. In rebuttal testimony was adduced to show that the power of attorney given by the plaintiff to Bowman was revoked by parol before the settlement was made by him with the company. The revocation of the power was contested. It was also shown that on February 7, 1913, the manager of the company with whom the settlement was made, by letter acknowledged a receipt of a letter from "Carter & McCallum, Attorneys," relative to the plaintiff's claim for the particular injury and advised said attorneys that he "would not entertain any proposition to settle same except on basis stated to their man and his attorney Bowman." This evidence was not objected to on the ground that a revocation of the power before it was exercised was not specifically pleaded by replication, and the evidence could not have been a surprise to the defendant. The transcript shows the summons *ad respondendum* in this action was served on February 2nd, 1913, and that on March 3rd, 1913, the defendant appeared in the action,

the day the declaration was filed. The manager for the defendant company admits receiving the summons and states that without noticing it or observing whether the names of Carter & McCallum as attorneys was endorsed thereon, he passed it on to the company's attorney, who states that when he was asked to draw the settlement papers, "an appearance had been entered" and he supposed Bowman "was the attorney who brought the suit." Thus the question is presented whether an acquittance has been shown in proof of the plea.

A power of attorney not coupled with an interest in the subject matter though under seal, may be revoked by parol; and such revocation is binding on the agent and on third persons who have notice of it, or have such knowledge as would reasonably put them upon enquiry that would disclose revocation.

In this case no interest in the agent was vested in the subject on which the power is to operate, but such interest of the agent was to accrue by the exercise of the power, therefore the interest and the power were never united so as to make the power coupled with an interest. There could have been a binding revocation of the power before the settlement. See Hunt v. Rousmaniers, 8 Wheat. (U. S.) 174, text 204; Missouri, ex rel. Walker v. Walker, 125 U. S. 339, 8 Sup. Ct. Rep. 929; Taylor v. Burns, 203 U. S. 120, 27 Sup. Ct. Rep. 40; Mechem on Agency, Secs. 207, 217; Rinehart on Agency, Sec. 160; Brookshire v. Brookshire, 8 Iredell Law (N. C.) 74, 47 Am. Dec. 341; 31 Cyc. 1306.

The receipt by the manager of the defendant company of a letter from other attorneys relative to the claim and the service of summons in an action on the claim and the entry of an apperance in the action for the company by its attorney were clearly sufficient to show an

action brought by other attorneys on the claim and to put the defendant and its representatives on enquiry that would have disclosed a revocation of Bowman's authority before the settlement was made. The knowledge thus brought to the company's attention was inconsistent with Bowman's power of attorney which the plaintiff had a right to revoke. In view of the particular nature of the power given to Bowman the letter from other counsel relative to the claim, and the service of summons in an action of the claim in which other counsel were acting for the plaintiff in the particular matter, were sufficient to advise the defendant that it should look to its interests in this action brought before the settlement was made. See Johnson v' Youngs, 82 Wis. 107, 51 N. W. Rep. 1095; Watts v. Kavanagh, 35 Vt. 34; Williams v. Birbeck, Hoffman's Chan. (N. Y.) 359; Williamson v. Richardson, 30 Fed. Cas. No. 17,754; Florida Cent. & P. R. Co. v. Ashmore, 43 Fla. 272. 32 South Rep. 832. The power given in this case was not founded on a consideration for the payment of an indebtedness as in McGriff v. Porter, 5 Fla. 373. The authority given to compromise the plaintiff's claim for damages conferred a mere power, and conveyed no interest in the claim.

There was no error in not excluding evidence as to a parol revocation of Bowman's power of attorney and the conflicts in the evidence as to such revocation were settled by the jury, there being substantial evidence upon which a revocation of the special power, and defendant's notice of it could reasonably have been found, while the charges of the court were sufficiently full and fairly submitted the issues. The instrument conferring the special power was not required to be recorded. Further discussion is not necessary.

2—Vol. 67.

The judgment is affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.