Emeterio Santovenia **ECHAIDE** and Lorenzo Santovenia, as assignees of Emilio Garcia Mendez, Plaintiffs-Appellees,

v.

**CONFEDERATION OF CANADA LIFE INSURANCE a/k/a Confederation Life Association, etc., Defendant-Appellant.**

No. 71–3062.

United States Court of Appeals,
Fifth Circuit.

May 11, 1972.

Phillip G. Newcomm, Shutts & Bowen, Miami, Fla., for defendant-appellant.

James M. Henderson, Kneale, Roberts, Kneale, Starkweather & Henderson, Miami, Fla., for plaintiffs-appellees.

Before TUTTLE, GEWIN and THORNBERRY, Circuit Judges.

TUTTLE, Circuit Judge:

This is another in a growing list of cases involving insurance policies issued in Cuba, prior to Fidel Castro's takeover there in 1959, upon which claimants in the United States seek to recover. Plaintiffs here, claiming as assignees of the original insured, a Cuban resident, were awarded summary judgment by the district court. We reverse.

Appellant is a Canadian insurance corporation authorized to do business in Florida and which has, since 1908, maintained a business office in Havana, Cuba. Some time prior to 1950 appellant issued in Havana a life pension policy to Emilio Garcia Mendez, a Cuban citizen.[1] By its terms the policy provided for the payment to the insured, after February 21, 1963, of a monthly pension in the amount of $100. In lieu of this particular pension, however, the insured could upon written notice to the company opt instead for one of four other methods of payment. Three of these were differing monthly pension plans; the fourth was the option to take the cash surrender value of the policy as of the date when such option was exercised. However, once a particular option was selected and payments under a monthly pension had commenced, the policy provided that the insured could not thereafter select a different option.

Appellant does not dispute that premiums on the policy have been fully paid nor does it deny its obligation to pay what is rightfully due under the policy.

Plaintiffs brought this action in Florida to recover the cash surrender value of the policy. They alleged that they represented Mendez, the insured, by virtue of a power of attorney executed by him in their favor in May of 1962 and that they had demanded payment of the appellant but without success.[2]

In its answer defendant-appellant generally denied the material allegations of the complaint and affirmatively alleged

1. The record reveals that originally there were two smaller policies which in 1949 were combined into a single insurance pension with a face amount of $10,000.

2. The demand was made by letter dated February 3, 1970, a copy of which was attached to the complaint. There is no evidence in the record to indicate that plaintiffs had at any time prior to that date notified appellant of the alleged power of attorney.

that in late 1965 Mendez, the insured, himself selected one of the options under the pension policy and that since that time and in accordance with the pension plan thus chosen appellant has been paying Mendez in Cuba the sum of 117.60 pesos monthly.[3] Significantly appellant without qualification denied plaintiffs' allegation that "(p)laintiffs represent the insured by virtue of a power of attorney executed in their favor on the 30th of May, 1962." Thereafter appellant submitted affidavits and documents, discussed hereinafter, in support of its affirmative allegations and moved the court for summary judgment. Plaintiffs, without submitting affidavits of their own, then filed a cross-motion for summary judgment on the ground that there was no issue as to any material fact, adding that they would "rely on the pleadings previously filed in this action, together with supporting affidavits and the attached Memorandum of Law submitted herewith." The court entered summary judgment in favor of plaintiffs and the insurance company now appeals from that judgment.

We think that on this state of the pleadings it was error to enter summary judgment for the plaintiffs. Rule 56(c) of the Federal Rules of Civil Procedure in pertinent part provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to judgment as a matter of law." (Emphasis supplied). We are of the view that appellant in its answer raised such an issue of fact by categorically denying plaintiffs' allegation that they represented Mendez through a power of attorney. This denial, we think, was sufficient to raise as factual issues whether plaintiffs did then and there represent the insured by virtue of the power and indeed whether such a power ever existed in favor of plaintiffs. Although plaintiffs attached to their pleadings a copy of the document purporting to grant the power of attorney, they did not, by affidavit or otherwise, attempt to rebut appellant's outright denial of the existence and/or current validity of this power. Under these circumstances summary judgment for plaintiffs ought not to have been granted.

However, in view of certain concessions made by plaintiffs we find it unnecessary to remand the case for a resolution of the factual issues, for even if we assume that Mendez did in fact execute a power of attorney in favor of the plaintiffs, we are of the opinion that as a matter of law appellant is nonetheless entitled to judgment. We note that plaintiffs brought this action in a representative capacity in behalf of Mendez, the original insured. Their averment in the complaint was that *"Plaintiffs represent the insured* by virtue of a power of attorney . . ." which indicates that plaintiffs in this suit were acting as Mendez' *agents* for purposes of collecting on the policy. See Jacksonville Terminal Co. v. Smith, 67 Fla. 10, 64 So. 354 (1914). It follows, therefore, that if Mendez himself selected an option under his policy and is receiving payments from the company pursuant to it, then plaintiffs would have no basis for maintaining this suit inasmuch as Mendez, the principal, would already have accomplished that which he authorized the plaintiffs, his agents, to do. 3 Am.Jur. 2d, Agency § 36.

3. Specifically, appellant alleged that:
   "The annuitant's conduct with respect to his interest and the benefits under the annuity contract defeats Plaintiffs' standing to sue herein, that is to say, on November 19, 1965, the insured selected an option providing for a monthly pension for life of 117.60 pesos and, consequently, on December 8, 1965, the endowment policy was endorsed to provide for the said monthly pension under Annuity No. 21504. Furthermore, and consequent upon the endorsement of the endowment policy to an annuity contract, the insured has, from October 21, 1965 to date continued to receive monthly pension payments of 117.60 in Havana, Cuba."

The pivotal issue, then, is whether it has been established *as fact* that Mendez chose a pension plan and that thereafter appellant made and continues to make payments to Mendez accordingly. We think it has. It is noted that in support of its allegations to that effect (which under the federal rules of pleading stood denied) appellant submitted to the trial court the affidavit of Michael Rosenfelder, Associate Corporate Actuary for appellant. In his affidavit Rosenfelder averred, inter alia:

9. That on February 21, 1963, the said Pension Date, Emilio Garcia Mendez was entitled to select one of four options set out in the policy, one of which would have entitled him to a cash settlement of 16,541 pesos consisting of a cash option of 15,450 pesos and accumulated bonuses of 1,091 pesos, but he decided to defer any settlement until a future date.

10. That now produced and shown to me and marked Exhibits A and B to this my affidavit are photostats respectively of a form in Spanish executed by Emilio Garcia Mendez dated November 19, 1965, and an English translation thereof, whereby he selected an option providing for a monthly pension for life of 117.60 pesos without a minimum period guaranteed to take effect from October 21, 1965. Emilio Garcia Mendez also received the sum of 1,211.32 pesos in cash representing dividends *accumulated to* November 21, 1965.

11. That on December 8, 1965, the Association formally endorsed Policy #526001 to provide for the said monthly pension which was numbered as Annuity #21504.

12. That under controlling Canadian legislation, the Association is required to maintain reserves to meet its liabilities and accordingly, on October 21, 1965, the Association set aside in Cuba the sum of 17,085 pesos as a reserve for the payment of Annuity #21504; as of October 21, 1969, the amount of the reserve was 15,115 pesos and as of October 21, 1970, the amount of the reserve will be 14,607 pesos.

13. That the sum of 117.60 pesos has been paid at the principal office of the Association in the City of Havana, Republic of Cuba, to Emilio Garcia Mendez from and including October 21, 1965 to and including May 21, 1970. Now produced and shown to me and marked as Exhibit C to this my affidavit is a photostat of a cable received on June 4, 1970 from the principal office of the Association in the City of Havana, Republic of Cuba, with respect to monthly payments made from November 21, 1969 to May 21, 1970. Now produced and shown to me and marked as Exhibit D to this my affidavit is a photostat of the cable received from the principal office of the Association in the City of Havana, Republic of Cuba, rectifying the typographical error made in Exhibit C by changing the year "1919" to "1969".

14. That the Association will continue to make all monthly payments to Emilio Garcia Mendez in Havana, Cuba in accordance with the terms of *Policy* #526001 and Annuity #21504.

/s/ Michael Rosenfelder

Michael Rosenfelder

A copy of a letter, allegedly signed by Mendez and indicating his selection of a pension plan, and telegrams indicating that payments were being made pursuant thereto were attached to the affidavit.[4]

4. The letter was a standard form from the company which outlined the available options and solicited a response. At the bottom thereof were written the words (in Spanish), "I select option one." Signed, Emilio Garcia.

■■ Although we have doubts that for purposes of summary judgment this affidavit, at least insofar as it pertained to the letter allegedly signed by Mendez, was competent to prove what it sought to prove,[5] we think that plaintiffs have admitted the truth of Rosenfelder's averments. We note that in its appeal brief, as a part of the Statement of the Case and Facts, appellant said, "Defendant filed a motion for summary judgment supported by affidavits stating facts to confirm Defendant's defenses of (1) no breach of contract and (2) application and effect of Cuban currency laws. Specifically, the supporting affidavit of Michael Rosenfelder, Associate Corporate Actuary for Defendant, *established the following material facts which appear in the record without dispute: . . . ."* (Emphasis supplied). The bulk of Rosenfelder's affidavit is then quoted in the brief, including the paragraphs cited by us, supra. To this plaintiffs responded, "Appellees agree with the Statement of the Case and the Facts as presented in Appellant's brief." Moreover, in the district court, plaintiffs filed no affidavits in response to those submitted by appellant which included that of Rosenfelder.[6] Rather plaintiffs in their cross-motion for summary judgment were content to *"rely* on the pleadings previously filed in this action, *together with supporting affidavits* and the attached Memorandum of Law." (emphasis supplied). This circumstance, together with plaintiffs' acceptance of the facts as recited by appellant in its brief, we think, constitutes a concession as to the truth of the statements made by Rosenfelder in his affidavit, specifically, that Mendez exercised his option, and that the company, accordingly, pays him 117.60 pesos monthly.

That being so, appellant is entitled to judgment in this case. Inasmuch as Mendez currently enjoys the full benefits of his pension policy, there is no breach of the contract on the part of appellant and Mendez' representatives, plaintiffs herein, have no basis for maintaining this action.

The judgment is reversed and the case remanded to the district court with directions to enter judgment in favor of appellant.

---

5. Rosenfelder, as noted, was a corporate actuary. The factual averments in his affidavit were based on his study of the corporation's records at its home office in Canada and there is nothing before us to suggest that he knew from personal knowledge that Mendez signed the letter or that he was acquainted with Mendez' signature. Fed.R.Civ.P. 56(e), of course, requires that affidavits be based on personal knowledge and contain only such evidence as would be admissible at a trial. See 6 Moore's Federal Practice, paragraph 56.22 [1].

6. We note that Rule 56(e) of the Federal Rules of Civil Procedure provides, in part, that "(w)hen a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of his pleading*, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis added). While plaintiffs perhaps need not have responded to appellant's affidavits (See n. 5, supra.) the failure to do so is risky, United States v. DeWitt, 265 F.2d 393 (CA 5, 1959), and in an appropriate case the uncontroverted averments in an affidavit will be treated as fact. See Surkin v. Charteris, 197 F.2d 77 (CA 5, 1952).