John L. BROADWAY et al.,
Plaintiffs-Appellants,

v.

CITY OF MONTGOMERY, ALABAMA,
et al., Defendants-Appellees.

No. 74–3848.

United States Court of Appeals,
Fifth Circuit.

April 22, 1976.

Robert D. Segall, Montgomery, Ala., for plaintiffs-appellants.

Frank W. Riggs, Joseph D. Phelps, Montgomery, Ala., for defendants-appellees.

Before GEWIN and AINSWORTH, Circuit Judges, and MARKEY,* Chief Judge.

AINSWORTH, Circuit Judge:

Plaintiffs, John L. Broadway, Levis Broadway, James Broadway, Joan McGraw and Robert Segall, appeal from a summary judgment in favor of defendants, City of Montgomery, Alabama, and two of its police officers, Don R. Terry and James Lisenby.

The original complaint filed on January 14, 1974 by John L. Broadway sought damages and injunctive relief under 42 U.S.C. § 1983, et seq. and 18 U.S.C. § 2520.[1] The complaint alleged that on or about August 1, 1973, Don R. Terry, supervisor of the Vice Squad of the Montgomery Police Department, and James Lisenby, police detective attached to the Vice Squad, placed or procured an illegal wiretap on John L. Broadway's telephone and intercepted certain oral communications. The complaint also al-

---

* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

1. 18 U.S.C. § 2520 provides in pertinent part:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

leged negligence of the City of Montgomery in failing properly to train its police officials. By amended complaints, John L. Broadway's parents, Levis and James Broadway, McGraw and Segall, counsel for James L. Broadway and the other parties in this case, all of whom allegedly had telephone conversations over the wiretapped telephone, were added as parties plaintiff.

John L. Broadway was arrested on June 6, 1973 on separate Alabama state charges pertaining to possession of cocaine and possession of marijuana, which were later docketed in the Circuit Court of Montgomery County, Alabama, under Case Nos. 9029 and 9030. Lisenby, who was working under the supervision of Terry, participated in the arrest.

On August 3, 1973, John L. Broadway discovered a wire leading from the telephone pole in front of his residence to a tape recorder in a nearby wooded area. He subsequently turned over the equipment to the Federal Bureau of Investigation.

In defense of the state criminal charges against him, John L. Broadway moved in state court to suppress the evidence on the ground of illegal seizure as a result of the wiretap. The motion to suppress was denied by the state court after an extensive hearing held on November 13 and 14, 1973. John L. Broadway subsequently went to trial but pleaded guilty at the close of the state's case to possession of cocaine. He failed to appear for sentencing, jumped bail, and since April 18, 1974 has been a fugitive from justice. The state charge against him for possession of marijuana is still pending.

After numerous amendments to the complaint and utilization of various discovery devices by the parties, defendants moved for summary judgment based on the pleadings and depositions of record. In opposition thereto plaintiffs submitted an affidavit of counsel-plaintiff Segall and the transcript from the hearing on the motion to suppress in the state criminal cases. The District Court granted the motion for summary judgment and this appeal followed.

## JOHN L. BROADWAY'S CLAIMS

John L. Broadway, being a fugitive from justice, is not entitled to call on the resources of an appellate court for a determination of his case. *See Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); *Van Blaricom v. Forscht,* 5 Cir., 1974, 490 F.2d 461; *Fratus v. United States,* 5 Cir., 1974, 496 F.2d 1190; *United States v. Shelton,* 5 Cir., 1975, 508 F.2d 797. It is immaterial that the custody from which he fled is that of another sovereign. *United States v. Shelton,* 5 Cir., 1973, 482 F.2d 848, *cert. denied,* 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973). We therefore dismiss the appeal as to John L. Broadway.

## CLAIMS OF ADDITIONAL PLAINTIFFS

*Plaintiffs' claim under 18 U.S.C. § 2520*

Terry and Lisenby testified that they learned about the wiretap only after it was discovered by John L. Broadway. This testimony is uncontroverted by any admissible evidence. In order to prevail under 18 U.S.C. § 2520 the remaining appellants must show that the oral communications were in fact intercepted, disclosed or used by defendants.[2] The district judge observed that "There is no evidence that any communication was disclosed or used by any defendant in this case." He considered it unnecessary to decide the question of interception and based his judgment on the substantial evidence of defendants' innocence and the failure of plaintiffs to submit any admissible evidence to the contrary.[3] Our review of the record cor-

---

**2.** *See* n. 1, *supra.*

**3.** Ira DeMent, United States Attorney for the Middle District of Alabama, testified at the hearing on the motion to suppress that the tape recorder had been examined by the Federal Bureau of Investigation's laboratories in Washington, D.C., and that it was impossible to determine from whence it came; and that there was no admissible evidence obtained either by the FBI or in the U.S. Attorney's files which focused on the Montgomery Police

roborates the finding of the district judge in respect to nondisclosure and nonuse of any communication by defendants, and further supplies the answer to the question of interception. Terry emphatically denied that he ever listened to the tape, and although Lisenby was not questioned in respect to interception, his uncontroverted testimony of lack of knowledge of the existence of the wiretap prior to its discovery precludes any reasonable inference of interception.

"Interception," as the term is used in 18 U.S.C. § 2520, is defined as:

[A]ural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device. 18 U.S.C. § 2510(4).

"Aural" is defined as "of or relating to the ear . . . or to the sense of hearing," Webster's Third New International Dictionary, G. & C. Merriam Company (1961). Depositions of appellants Levis Broadway, James Broadway and McGraw conclusively and affirmatively show that they had no factual knowledge to substantiate the charge that defendants heard or listened to the tape.[4] The only suggestion of interception by defendants came from the affidavit of appellant Segall submitted in opposition to the motion for summary judgment. The affidavit constitutes nothing more than a recital of unsupported allegations, conclusory in nature.[5] As such it is insufficient to avoid summary judgment. *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 5 Cir., 1973, 479 F.2d 135; *Bros, Inc. v. W. E. Grace Manufacturing Co.*, 5 Cir., 1958, 261 F.2d 428. Plaintiffs have failed to negate defendants' evidence that they did not intercept, disclose or use any wiretapped communication. Thus there was no genuine issue as to the only material fact involved in the section 2520 claim, and the matter was ripe for summary judgment.

*Plaintiffs' "civil rights" claim*

▮▮▮▮ Plaintiffs contend in general allegations without supporting authority that apart from their claim under 18 U.S.C. § 2520, their civil rights were violated by the actual placing of the wiretap by defendants. In an attempt to rebut the testimony of Terry and Lisenby denying participation, plaintiffs rely on testimony from the hearing on the motion to suppress of David W. Crosland, former District Attorney in charge of the criminal prosecutions against John

---

**4.** Department. He further said that the wiretap equipment and the manner in which it was used was crude. Acting Police Chief Swendall testified that he had expressed the opinion to an FBI agent investigating the wiretap, that John L. Broadway himself had strung up the equipment.

Levis Broadway testified:

Q. Do you know for a fact, Mrs. Broadway, that any conversation you had with your son was intercepted by the Montgomery Police or by anyone else?
A. I don't know it for a fact.

She later responded to the same question:
A. I don't know it for a fact but I certainly feel it.

Joan McGraw testified:
Q. Now other than what Mr. Segall has told you, either socially or professionally, you don't know anything else that would substantiate the charge that any of these defendants intercepted or disclosed a communication which you had with John L. Broadway, is that correct?
A. That is correct.

James E. Broadway testified:

Q. Do you have any factual knowledge that the City of Montgomery or any official or police officer of the City of Montgomery disclosed or used any oral communication that you had with your boy?
A. No, sir.

**5.** The affidavit reads:

My name is Robert D. Segall, and I am over the age of twenty-one years. I am an attorney licensed to practice in the State of Alabama, and I represent Plaintiffs in the case of *John L. Broadway, et al. vs. City of Montgomery, et al.*, C.A. No. 74–16–N. In my capacity as attorney for the said Plaintiffs, I have listened to the tape used on the wire-tap of Mr. Broadway's telephone. One or more of the Plaintiffs in this case are on that tape. The other Plaintiffs also had oral communications intercepted by the Defendants.

As attorney for the Plaintiffs, I can also state that Plaintiffs have evidence which tends to show that Defendants Terry and Lisenby conspired to commit the acts complained of by Plaintiffs. There is, therefore, an issue of fact as to who put the wire-tap on Mr. Broadway's telephone.

L. Broadway. Crosland testified that three days after the wiretap was found Terry told him that Lisenby told Terry that "They had tapped Broadway's telephone," and that Terry "did not like the idea and so told Lisenby, but did not stop him from doing it." At the same hearing Terry denied that he had told Crosland that Lisenby admitted having performed the wiretap, and Lisenby staunchly and repeatedly denied having anything to do with the matter, declaring further that he was totally ignorant of the mechanics of constructing the wiretap device. The district judge was of the opinion that the conversation between Terry and Crosland was cloaked with privilege and therefore inadmissible. We need not reach the issue of privilege, inasmuch as Crosland's testimony consisted wholly of hearsay which would not be competent evidence at trial.[6] *See, e. g., Emmco Insurance Co. v. Wallenius Caribbean Line, S. A.,* 5 Cir., 1974, 492 F.2d 508; *Wells v. Shop Rite Foods, Inc.,* 5 Cir., 1973, 474 F.2d 838. Evidence inadmissible at trial cannot be used to avoid summary judgment. *See Echaide v. Confederation of Canada Life Insurance,* 5 Cir., 1972, 459 F.2d 1377; *Liberty Leasing Co. v. Hillsum Sales Corporation,* 5 Cir., 1967, 380 F.2d 1013.

The obvious function of summary judgment is to avoid a useless trial. Defendants have made a convincing showing that no genuine issue as to any material fact exists and that they are entitled to judgment as a matter of law; plaintiffs, on the other hand, have failed to come forward with the necessary countervailing evidence to defeat summary judgment.[7]

The appeal of John L. Broadway is DISMISSED; judgment in respect to the remaining plaintiffs is AFFIRMED.

6. As appellees state in their brief, p. 40:

   The statement by the witness Crosland of his alleged conversation with the defendant Terry is classic hearsay to which there is no recognized exception. *A Fortiori,* the statement by Crosland of what Terry said he was told by Lisenby constitutes double hearsay.

7. Appellants do not seriously dispute the immunity enjoyed by the City of Montgomery in

regard to their alleged civil rights claim. *See City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). There is no evidence that the City was negligent in failing properly to train its officers, and appellants have failed to rebut evidence of Terry and Lisenby denying their participation in the wiretap. Appellants' claim of negligence against the City must, therefore, fall.