Jessie **WALKER**, Plaintiff–Appellant,

v.

Thomas E. **DARBY**, Hugh L. Robinson, Jr., and Kenneth Day, Defendants–Appellees.

No. 89–7199.

United States Court of Appeals, Eleventh Circuit.

Sept. 20, 1990.

John R. Benn, Florence, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., James D. Ingram, Asst. U.S. Atty., Birmingham, Ala., for defendants-appellants.

Before JOHNSON and EDMONDSON, Circuit Judges, and PECKHAM *, Senior District Judge.

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

PECKHAM, Senior District Judge:

Appellant brought suit under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* for the alleged unauthorized interception of oral communications. The district court, 706 F.Supp. 1467, granted summary judgment in favor of appellees, finding that appellant had failed to present evidence sufficient to make out a *prima facie* case.[1] Because we believe that a question of material fact remained for trial in this case, we reverse.

## I. FACTS AND PROCEDURE.

Appellant Jessie Walker was employed as a letter carrier in the United States Post Office in Florence, Alabama. During the period leading up to the events underlying his claims, the relationship between Walker and three of his supervisors who are appellees in this action was extremely negative. Walker is black. The three supervisors—Superintendent of Mail Thomas E. Darby, Delivery Supervisor Kenneth Day, and Delivery Supervisor Hugh L. Robinson—are white. Walker and some of the other employees in the Florence Post Office believed that the three were engaged in a racially-motivated campaign to have Walker's employment terminated.[2] Walker had filed several EEOC complaints against appellees; he had filed assault charges against Kenny Day.

It was against this backdrop that Rodney "Roscoe" Hollis, who was temporarily stationed at the Florence Post Office as a substitute letter carrier, approached Walker. Hollis, a good friend of Kenny Day, told Walker to be careful about what he said while standing near his workstation or "case," because Hollis believed that Day and the others were monitoring Walker's conversations. Hollis describes the following conversation which he says he had with Kenny Day:

> [Day] come up to me and he said, "Roscoe, boy, you ought to see what we got up there in Darby's office." And I said "What?" But he never did come right out and say what. But he said, "Boy, you can sit in Darby's office and you can hear everything that nigger says." He said, "You can hear that nigger when he mumbles under his breath." Deposition of Rodney Hollis at 12.

After this conversation, Walker took note of two objects in the area around his case. He noticed an object attached to the wall above his case, and another intercom-like object with buttons sitting on a desk opposite from his case.

Rodney Hollis had also mentioned his conversation with Day to Alan Gray, an employee in the Florence Post Office, who was an officer of the local postal workers' union. Gray took it upon himself to walk by the area near Walker's case to investigate Hollis' allegations. He noticed a brown box with buttons on it attached to the wall above Walker's case.

Walker filed a complaint in federal district court on May 26, 1988, charging Darby, Day, and Robinson with illegal interception of his conversations and invasion of privacy. In December, 1988, appellees filed a motion to dismiss or, in the alternative, for summary judgment. As grounds for dismissal they argued that Walker's claims were based exclusively on conclusory allegations and hearsay testimony.

1. The district court also granted summary judgment on a pendent state claim for invasion of privacy. Because it is not discussed in appellant's brief, we assume that appellant does not appeal the state invasion of privacy claim.

2. Rodney "Roscoe" Hollis describes efforts by the three to terminate Walker by gathering evidence that he was not performing his duties quickly enough:

   > HOLLIS: They said, "When Jessie saw us coming it was like he threw an anchor out the back of his jeep." You know, he slowed down so much he was pulling an anchor. And they'd say, "Guess where we're going, Roscoe?" And I'd say. "Where?" and they'd say, "We're going coon hunting." I'd say "Coon hunting?" And [Robinson]'d say, "Yeah, we're going out and tree us a coon." He said, "We're going out on Tech 24."
   > Q: You knew that to be Mr. Walker's route?
   > HOLLIS: Oh, yes.

   Hollis states that Day told him they were planning ways to circumvent postal regulations, which required that an employee be allowed several probationary periods before being terminated.

They denied that any interception ever took place. The three submitted affidavits stating that the activity observed by Gamble and Hovater was merely the repair of an inoperative public address system to be used for paging employees. R1–38.

In his opposition to defendants' motion, Walker provided the district court with a significant amount of eyewitness testimony addressing Darby, Day, and Robinson's alleged installation of an intercom or other monitoring device. Everett Carter Gamble, another postal worker, testified at his deposition that he observed the three installing and testing "a little box speaker of some sort" diagonally across from Walker's case. He jokingly remarked to Darby, " 'You're gonna hear everything we say now, aren't you?' " to which Darby replied, in a joking manner, " 'Oh yeah, we've got it fixed up.' " Deposition of Carter Gamble at 6–9.

Harold Hovater, a letter carrier whose case was located near Walker's, said he observed the three working with a maintenance person named Ed Grigsby to wire and test an intercom in the area. In his deposition, Hovater described the process, which he said took about forty-five minutes, as follows:

> When they started testing the intercom, Mr. Darby, Mr. Day, and Robinson was in Mr. Darby's office. And Mr. Grigsby was talking over the intercom and he would ask them if they could hear okay and they would say yes, you know. And they would tell him to move around in certain positions in that area to see how far it would pick up. . . .
>
> . . . [A]fter they had him to test it Kenny [Day] and Robbie [Robinson] came out and done the same thing. . . .
>
> Q. Did they stand close to Mr. Walker's work or case area?
>
> A. Yes, they did. [Deposition of Harold Hovater at 9–12.]

Hovater later describes being asked by Darby to write out a statement of what he had seen. He alleges that Darby told him, "if this wasn't dropped there would be some jobs at stake." Deposition of Harold Hovater at 13.

Other postal employees related admissions to them by appellee Robinson that conversations in the area near Walker's case were being monitored. Mike Nale, another letter carrier with a case near Walker's, states that Robinson told him to watch what he said in the area because "the place was wired." Deposition of Mike Nale at 9. Letter carrier William Thomas Childers stated that Robinson told him Day was recording conversations.

The district court granted summary judgment on February 10, 1989. On the same day, Walker filed a notice of this appeal.

## II. DISCUSSION.

### A. *Standard of Review.*

An appellate court reviews a district court's summary judgment rulings using the standard provided in Fed.R.Civ.P. 56 and the case law interpreting it. *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir.1988); *Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir.1987). In other words, review is *de novo.*

Federal Rule of Civil Procedure 56(c) provides for the granting of summary judgment where there is no triable issue of material fact and where the moving party is entitled to summary judgment as a matter of law. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, once the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, Federal Rule of Civil Procedure 56(e) shifts to the non-moving party the burden of presenting specific facts showing that such contradiction is possible. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 950–52 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or other-

wise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

**B.** *Unauthorized Interception of Oral Communications.*

Plaintiff invokes the private right of action contained in § 2520 of the anti-wiretapping statute, 18 U.S.C. §§ 2510 *et seq.* Section 2520 provides in pertinent part:

[A]ny person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

In order to recover under § 2520, plaintiff must show that defendants violated § 2511, which prohibits the interception, disclosure, or use of any wire or electronic communication.[3] Walker alleges only interception of communications. He does not allege disclosure or use of any communications.[4] As defined by 18 U.S.C. § 2510(4), " 'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Walker alleges only the interception of his oral communications; he does not allege a violation with respect to wire or electronic communications. As defined by 18 U.S.C. § 2510(2), " 'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation...."

Thus, in order for Walker's claim to survive summary judgment, the district court would have had to find that a question of material fact remained with respect to the following three elements: 1) whether Walker's communications were indeed intercepted by Darby, Day, and Robinson through the use of any electronic, mechanical or other device; 2) whether Walker had an expectation that his oral communications were not subject to interception; and 3) whether, if Walker had such an expectation, the expectation was justified under the circumstances. 18 U.S.C. § 2510.

The district court believed that in order to raise a question of material fact regarding the first element—the actual interception of conversations—Walker would need to allege the specific contents of conversations. The district court came to this conclusion by way of interpretation of a phrase in *Broadway v. City of Montgomery*, 530 F.2d 657 (5th Cir.1976). The *Broadway* court, in holding that the plaintiff had failed to make out a claim under § 2520, wrote, "appellants must show that the oral communications were *in fact* intercepted, disclosed, or used by defendants." 530 F.2d at 659 (emphasis added). The plaintiff had failed to do this, the court found, where he had failed to present any evidence whatsoever linking either of the two defendants to the recording device discovered in his home. While the district court here read the use of "in fact" to require proof of contents, the *Broadway* court did not require the plaintiff to prove the specific contents of the intercepted conversations.

Indeed, a Georgia district court case later cited favorably in *Scutieri v. Paige*, 808 F.2d 785 (11th Cir.1987), rejected the argument that the phrase "in fact" as used in *Broadway* required proof of the specific contents of intercepted conversations.[5] In *Awbrey v. Great Atlantic & Pac. Tea Co., Inc.*, 505 F.Supp. 604 (N.D.Ga.1980), defen-

---

**3.** Section 2511 provides in pertinent part: "[A]ny person who ... intentionally intercepts ... any wire, oral, or electronic communication ... shall be subject to suit as provided...."

**4.** The language of the statute indicates that this phrase is to be read in the disjunctive; that is, a

showing of *either* interception, disclosure, or use will be sufficient to maintain an action.

**5.** While the *Awbrey* case involved interception of wire rather than oral communications, this distinction does not render the *Awbrey* holding inapplicable to the facts of this case.

dants relied on *Broadway*'s use of "in fact" to argue that no action should lie under § 2520 where plaintiff was unable to allege interception of specific conversations by offering proof of the conversations' dates and contents. In rejecting that argument, the *Awbrey* court wrote:

> [D]efendant's argument flies in the face of the statute and the nature of the tort.... the fact that most of the plaintiffs have no personal, first-hand knowledge that any particular phone call was tapped is not remarkable.... The intentional tort of wiretapping created by 18 U.S.C. § 2520 is obviously one which by its very nature is unknown to the plaintiff. 505 F.Supp. at 606–607.

This circuit adopted the *Awbrey* reasoning in *Scutieri*, when it held that plaintiffs could establish a wiretapping claim with circumstantial evidence. Citing *Awbrey*, the *Scutieri* court held that "Direct evidence may not have been available based on the stealthiness of the invasion. The success of the wiretap ultimately depends on secrecy and concealment." 808 F.2d at 790. *See also Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 584 (11th Cir.1983) (criminal violation of anti-wiretap statute requires only interception, not interception of particular material).

■ Thus, we find that appellant can raise a question of fact regarding appellees' actual interception of his conversations without proving the contents of specific conversations allegedly intercepted. Having resolved this, we find that the district court erred in finding that no question of fact remained for trial regarding the interception of oral communications in violation of § 2511. Given the facts detailed above, there was clearly evidence sufficient to raise a question of material fact regarding whether Darby, Day and Robinson had participated in installing an intercom or other listening device and whether they had in fact intercepted Walker's communications.[6]

■ The other two elements required to make out a § 2520 claim can be treated together. In order to survive summary judgment, Walker would have had to raise a question of fact for trial regarding whether he expected his conversations to be free from interception, and whether, if he had this expectation, it was justified by the circumstances. These two elements may be viewed as subjective and objective prongs of the same inquiry.

We note as an initial matter that we do not need to determine whether Walker had a reasonable expectation of privacy in his case area in the Florence Post Office.[7] The statute requires us to determine whether he had a subjective expectation that his conversations were free from interception, and whether that expectation was objectively reasonable. 18 U.S.C. §§ 2510(2), 2520.

Other courts have found that an action for violation of the anti-wiretap statute may be maintained even in the absence of an expectation of privacy as generally understood in the Fourth Amendment search and seizure context. *Boddie v. American Broadcasting Companies, Inc.*, 731 F.2d 333, 338–39 and n. 5 (6th Cir.1984); *Bianco v. American Broadcasting Companies*, 470 F.Supp. 182, 185 (N.D.Ill.1979) ("...

---

6. The district court found that the evidence Walker submitted consisted only of hearsay and conclusory allegations not rooted in personal knowledge. We disagree with this conclusion. Day and Robinson both allegedly made statements admitting that communications were being intercepted. These statements are admissions by party opponents and therefore admissible non-hearsay. Fed.R.Evid. 801(d)(2). The testimony by Gamble and Hovater regarding appellees' alleged installation of a monitoring device was based on those witnesses' own observations and thus clearly rooted in personal knowledge.

7. In *O'Connor v. Ortega*, the Supreme Court held that the question of whether a public employee has a reasonable expectation of privacy in his or her workplace must be addressed on a case-by-case basis by weighing the general societal expectation of privacy in the workplace against the practical realities of the particular workplace—i.e., the amount of access enjoyed by co-workers, supervisors, or the public. 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). *See generally* Note, *A Proposal for Mandatory Drug Testing of Federal Employees*, 62 N.Y.U.L. Rev. 322, 331–37 (1987) (Fourth Amendment limitations on searches of public employees in drug testing context).

there may be some circumstances where a person does not have an expectation of total privacy, but still would be protected by the statute because he was not aware of the specific nature of another's invasion of his privacy.") These courts distinguish between an expectation of privacy and the expectation of noninterception that is discussed in § 2510(2). We agree that there is a difference between a public employee having a reasonable expectation of privacy in personal conversations taking place in the workplace [8] and having a reasonable expectation that those conversations will not be intercepted by a device which allows them to be overheard inside an office in another area of the building.

■ Therefore, the issue is whether a question of fact remained for trial regarding whether Jessie Walker had a subjective expectation that conversations taking place near his case were free from interception. The only evidence in the record on this point is an affidavit submitted to the district court by Walker in opposition to appellees' motion for summary judgment. In the affidavit, Walker states:

> I never gave permission to Kenneth Day, Thomas Darby or Hugh Robinson to intercept or monitor any of my conversations that took place while I was at my work station in the post office. That during the time of the events alleged in my lawsuit, I had numerous private and personal conversations with various other employees.... R1–42.

The district court had no other evidence before it contradicting this statement by Walker. Therefore, there was a question of fact for trial concerning the subjective prong of the inquiry.

The district court did not discuss whether any subjective expectation that Walker's oral communications would be free from

interception was objectively justified under the circumstances. Again, we must distinguish this inquiry from the question of whether Walker had an objectively reasonable expectation that conversations taking place near his case would be overheard. The case was located in an area shared with other workers. But while Walker might have expected conversations uttered in a normal tone of voice to be overheard by those standing nearby, it is highly unlikely that he would have expected his conversations to be electronically intercepted and monitored in an office in another part of the building. Given that we must draw all inferences in favor of the non-moving party, we find that a question of fact remained for trial on this point.

The record shows that questions of fact remained for trial on the three elements required to make out a claim of violation of 18 U.S.C. § 2520. We therefore REVERSE and REMAND for further proceedings consistent with this opinion.

EDMONDSON, Circuit Judge, concurring:

I concur in the judgment. I agree that in a lawsuit alleging the interception of oral communication in violation of 18 U.S.C. § 2511, a plaintiff need only show interception of communication, not that particular conversations were intercepted. Given the facts, as detailed in today's opinion, sufficient evidence raised a question of material fact regarding whether Walker's communications had been intercepted. I thus agree that the district court erred in finding that no question of fact remained on this issue and in granting summary judgment.

While I concur in the judgment, I believe that much of today's court opinion is *dicta*. The district court never discussed whether plaintiff's expectations of being free from interception were justified, and defendants'

---

8. We note another way in which the facts of this case differ from the facts of other cases in which courts have considered the expectation of privacy issue. The issue of a public employee's expectation of privacy generally arises in the context of legitimate attempts by employers to police employee conduct. *See, e.g., O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (warrantless search of employee's office to investigate charges of extortion and sexual harassment). No such attempt is suggested by the facts of this case. Walker asserts that Darby, Day and Robinson intercepted his conversations in pursuit of a personal vendetta against him. Darby, Day and Robinson contend that no interception took place. No party contends that appellees acted in an official capacity in intercepting Walker's conversations.

motion for summary judgment says nothing about the reasonableness of such expectation in the circumstances. The reasonableness point was not raised in district court and not raised on appeal as I read the briefs. Today's court need not decide the point to decide this appeal. And, on this record, I decline to address the question of when an employee may have a reasonable expectation of non-interception, especially without the district court having first addressed the question. On remand, the district court—with the help of the parties—can still consider the matter of reasonable expectations as more facts are developed, either at trial or in advance of trial.