**VISION I HOMEOWNERS ASSOCIATION, INC., a Florida non-profit corporation, Plaintiff,**

v.

**ASPEN SPECIALTY INSURANCE COMPANY, a North Dakota corporation, and James River Insurance Company, an Ohio corporation, Defendants.**

Case No. 08–81211–CIV.

United States District Court, S.D. Florida.

Dec. 22, 2009.

Daniel S. Rosenbaum, Jennilynn E. Lawrence, John Marcus Siracusa, Mark Gerard Keegan, Richard Chambers Valuntas, Katzman, Garfinkel, Rosenbaum, LLP, West Palm Beach, FL, for Plaintiff.

Max Galen Factor, William Lanier Wallis, Gina G. Smith, Butler Pappas Weihmuller Katz et al, Tallahassee, FL, Richard Michael Dunn, Anaysa Gallardo, Cozen O'Connor, Miami, FL, for Defendants.

*ORDER GRANTING IN PART; DENYING IN PART JAMES RIVER'S MOTION FOR SUMMARY JUDGMENT*

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant James River Insurance Company's Motion for Summary Judgment [DE–81], filed herein on July 24, 2009. The Court has carefully considered the Motion, Plaintiff's Response [DE–90], Defendant's Reply [DE–93], the arguments presented by counsel at the hearing before the undersigned on December 4, 2009, and is otherwise fully advised in the premises.

## I. *BACKGROUND*

Plaintiff Vision I Homeowners Association, Inc. ("Vision I") filed the above-styled action on October 21, 2008. [DE–1]. Vision I is a homeowners association and not-for-profit Florida corporation, doing business in Palm Beach County. Defendant Aspen Specialty Insurance company ("Aspen") is a foreign corporation and insurance carrier transacting insurance in Palm Beach County, Florida. It is incorporated in North Dakota and has its principal place of business in Massachusetts. Aspen provided property insurance, Policy No. PP 002120, to Vision I for the twelve month period commencing May 10, 2005.

Defendant James River Insurance Company ("James River") is a foreign corporation and insurance carrier transacting insurance in Palm Beach County, Florida. It is incorporated in Ohio and has its principal place of business in Virginia. It issued excess property coverage, Policy No. 00009793, for the twelve month period commencing May 10, 2005.

According to the Complaint, the intent of the contracts was to provide commercial lines residential property insurance coverage, including, but not limited to, coverage for hurricanes, for direct physical loss to the insured property for the twelve month period commencing May 10, 2005. Hurricane Wilma struck Palm Beach County on October 24, 2005. As a result, the Complaint alleges the insured property sustained damages and Vision I timely reported these damages to Aspen and James River. The insurers had an opportunity to inspect said damage. However, Plaintiff alleges that Defendants failed to provide Vision I with any estimate of the damages and have failed to adjust, pay, and/or settle the claim.

Plaintiff asserts three counts (Counts II, IV, and VI) against Defendant James River. Count II of the Complaint seeks a declaratory judgment against James River that the contract between them is valid and enforceable. Count IV is a claim for breach of contract against James River for a failure to pay the actual cash value of the losses or damages suffered by the property. Finally, Count VI is a breach of contract claim against James River for a breach of the replacement cost provision. On July 24, 2009, James River filed the

instant Motion seeking summary judgment on Plaintiff's claims, arguing that Vision I cannot yet bring a claim for breach of contract against James River as the primary limits have not been exhausted. Further, James River argues that Vision I is not entitled to Replacement Cost ("RCV") coverage because Section G of the Aspen Policy states that RCV will not be paid until the lost or damaged property is actually repaired or replaced. [DE–1, Ex. A at CP 00170402 pg. 14].

## II. *DISCUSSION*

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. After the movant has met its burden under Rule

56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleadings," but instead must come forward with "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

### B. James River's Motion for Summary Judgment

#### 1. Exhaustion Argument

James River's policy had a limit of liability of $7,174,600 per occurrence excess of $3,000,000 per occurrence. [DE–1, Ex. B]. As such, the James River policy attaches once Aspen has paid losses of $3,000,000 in excess of the 5% TIV deductible. *Id.* James River argues that in construing the clear and unambiguous terms of the policy language, James River does not respond unless and until the Aspen policy limit, $3,000,000, is paid and exhausted. James River points to the policy provisions expressly providing that the policy "will apply only after the primary and underlying insurer(s) have paid the full amount of their respective 'ultimate net loss' liability as set forth herein." [DE–1, at XP00001US 04–03 pg. 1]. In addition, James River argues that entire sections of the policy unambiguously contain the word "Excess" to indicate the tiered nature of the policy. In support, James River cites

to cases where courts distinguished excess versus primary policies and found that excess policies were not triggered unless or until the exhaustion of the primary policy. *Word v. Illinois Union Ins. Co.*, Case No. 07–CV 1513T33TGW, 2009 WL 152866, at *7 (M.D.Fla. Jan. 22, 2009); *Scottsdale Ins. Co. v. Safeco Ins. Co. of Am.*, 111 F.Supp.2d 1273, 1278 (M.D.Ala.2000).

In response, Plaintiff contends that the failure to exhaust the Aspen policy does not mean it cannot bring the instant suit against James River as there is a difference between a condition precedent to liability and a condition precedent to litigation. Plaintiff relies upon *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, Case No. 6:07–cv–326–Orl–DAB, 2009 WL 1513400, at *7 (M.D.Fla. May 27, 2009), where the court rejected the argument that "the failure to exhaust [the primary] policy limits to date means no suit can be brought against [the excess insurer] on the excess [p]olicy." In addition, Plaintiff argues, the language in the insurance policy is ambiguous. It states that it "will apply only after the primary and underlying insurer(s) have paid the full amount of their respective 'ultimate net loss' liability as set forth herein." While James River argues that this means Vision I cannot yet bring a contract claim until Aspen has paid the full amount of its policy limit, Vision I interprets it as stating that James River is only liable for the portion of the ultimate net loss that exceeds $3 million. Thus, Plaintiff argues the language should be construed in favor of the insured.

In reply, James River argues that the provision is not ambiguous and cannot be construed as such just to survive summary judgment. James River contends that the entire policy taken in context leads to the reading that the policy has not yet been triggered. James River points to the use of the term "have paid" to argue that liability is paid only after the primary insurer has paid the initial $3 million. James River refers to a footnote in *Gillespie*, that states "to some extent, the excess insurer's place in the litigation is akin to that of a third party defendant in that its liability is only triggered should the plaintiff prevail against the original defendant." 2009 WL 1513400, at *7, fn. 1.

At the outset the Court notes that James River has not cited a single case where a court has found exhaustion of the primary policy to be a condition precedent to litigation. While the Court agrees that as an excess insurer James River's liability only kicks in after the primary policy is exhausted, the Court cannot conclude that this precludes Vision I from bringing a lawsuit against James River before the primary policy is exhausted or dictates judgment on the claims as a matter of law. On the contrary, the Court concludes that the *Gillespie* decision is dispositive on this issue. 2009 WL 1513400, at *7. In *Gillespie*, the district court faced nearly an identical situation as here—that is, the excess insurer argued that the plaintiff's claims failed since the excess insurer had no payment obligation to plaintiff until the primary insurer paid its full coverage limits under the "exhaustion" provision of the policy. *Id.* at *6. The court noted that the excess insurer correctly argued "that it is not liable to pay under its Policy until the [primary policy] limits have been exhausted; an event which has not occurred." *Id.* at *7. As such, the excess insurer contended it could not be liable as a matter of law. *Id.* The court found that while it "agrees in principle with this contention, as far as it goes, the [c]ourt disagrees that the failure to exhaust [the primary] policy limits to date means no suit can be brought against [the excess insurer] on the excess Policy." *Id.* Although there was a genuine dispute as to the proper measure of damages, the

court noted that the plaintiff was seeking an amount that if awarded would implicate the excess policy. Thus, the court held that since the plaintiff alleged a claim under the excess policy, the excess insurer could not claim immunity from suit. *Id.* On the contrary, the court noted that there is a "difference between a condition precedent to liability and a condition precedent to litigation." *Id.*

Similarly here, James River's exhaustion argument is without merit. Plaintiff has asserted a claim under James River's excess policy and seeks an award of damages that if awarded, would implicate James River's policy. Accordingly, the Court concludes that James River cannot claim immunity from suit based on the exhaustion provision, rather the Court concludes that the exhaustion provision merely creates a condition precedent to liability not a condition precedent to litigation.

### 2. Replacement Cost

James River also argues that Vision I is not entitled to RCV as demanded in its Proof of Loss. James River points to Section G in the Aspen Policy which states that RCV will not be paid until the lost or damaged property is actually repaired or replaced. James River cites *Ceballo v. Citizens Prop. Ins. Co.*, 967 So.2d 811, 815 (Fla.2007), where the Florida Supreme Court held that "[c]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed." Therefore, James River argues that neither it nor Aspen is obligated to pay RCV because Vision I has not actually repaired or replaced the property at issue.

In response, Vision I argues that James River's argument fails because James River cannot demand that Vision I complete its repairs before receiving RCV because the failure of Aspen and James River to provide actual cash value ("ACV") payments prevented Vision I from making those repairs. Vision I contends that summary judgment is not appropriate as this issue involves factual matters that are disputed. Vision I points to *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, Case No. 07–22988–CV, 2009 WL 1492019, *2 (S.D.Fla. May 27, 2009), where the court rejected an identical argument by the insurer, as it would allow the insurer to benefit from its failure to pay the plaintiff's claim on an ACV basis by relying on that failure to exclude recovery under other provisions of the policy. *See also Vantage View, Inc. v. QBE Ins. Corp.*, Case No. 07–61038, 2009 WL 536546 (S.D.Fla. Mar. 3, 2009). Vision I also argues that Aspen and James River cannot insist upon the condition precedent of making repairs, that they themselves prevented from being performed. Aspen denied the claim and refused to provide payment on an ACV basis, which frustrated the ability of Vision I to conduct repairs.

In reply, James River contends that it is an excess carrier and, thus, not the first to respond to a claim for a covered loss and is not obligated to make any payments unless and until the primary layer is exhausted. Therefore, James River argues that the frustration arguments are only appropriate as to Aspen and distinguishes the *Buckley* and *Vantage View* cases cited by Plaintiff as those cases did not involve excess policies.

For the reasons set forth in the Court's Order Granting in Part, Denying in Part Aspen's Motion for Summary Judgment, entered contemporaneously with this Order, the Court holds that James River is entitled to summary judgment in its favor on Vision I's claim for RCV. Both Aspen and James River are relying upon the same provision in Aspen's policy as grounds that Vision I is not entitled to

RCV. Therefore, having concluded that Vision I is not entitled to seek RCV on account of its failure to notify Aspen of its intention to seek RCV coverage until well after the time provided for in the policy, Vision I's claim for RCV in regard to James River likewise fails as a matter of law.

## III. *CONCLUSION*

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant James River Insurance Company's Motion for Summary Judgment [DE–81] is hereby **GRANTED IN PART; DENIED IN PART;**

2. Defendant James River Insurance Company is hereby **GRANTED PARTIAL SUMMARY JUDGMENT** in its favor on Count VI of the Complaint as Plaintiff Vision I is precluded from recovering Replacement Cost Coverage.