[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 14, 2010
JOHN LEY
CLERK

No. 10-10032
_____

D. C. Docket No. 0:07-cv-60476-WPD

MARLENE WHITTIER, as Personal
Representative of the Estate of
Anthony Diotaiuto, deceased, and individually,

                                             Plaintiff-Appellant,

                        versus

CITY OF SUNRISE,
a Municipality of the State of Florida,
ANDRE BRUNA,
individually,
SEAN VISNERS,
individually,
DANIEL KOBAYASHI,
individually,
ERIC GOLDSTEIN,
individually, et al.,

                                             Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 14, 2010)

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

While serving a search warrant, City of Sunrise police officers shot and killed Anthony Diotaiuto. Marlene Whittier, as personal representative of Diotaiuto, sued the City, alleging constitutional and state-law violations. The district court granted summary judgment in favor of the City, and Whittier appeals. Whittier claims the district court erred by finding that (1) Whittier failed to show that the City had a custom or policy of not knocking and announcing before entering homes, and (2) Whittier's state-law tort claims were barred because Diotaiuto's injuries and death occurred during the commission of a forcible felony. After carefully considering the parties' briefs and thoroughly reviewing the record, we affirm the district court's grant of summary judgment.

## I.

The district court did not err by finding that Whittier failed to show that the City had a custom or policy of entering homes to serve search warrants without first knocking and announcing.[1] Whittier sued the city for alleged constitutional

---

[1] We review de novo a district court's grant of summary judgment. *Flava Works, Inc. v. City of Miami*, 609 F.3d 1233, 1236 (11th Cir. 2010). We view the evidence in the light most favorable to Whittier, the non-moving party, and we draw all reasonable inferences in her favor. *Id.* As the moving party, the City has the burden of establishing there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

violations under 42 U.S.C. § 1983. For purposes of § 1983, local governments cannot be held liable for the unconstitutional behaviors of their employees unless the plaintiff shows that an official policy or custom of the city was the "moving force" behind the constitutional deprivation. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). For § 1983 purposes, a "policy" is a "decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," and a "custom" is a "practice [of local government] that is so settled and permanent that it takes on the force of law." *Id.*

In this case, after extensive discovery, Whittier was able to identify only three incidents in which City police officers may have entered a private residence without first knocking and identifying themselves.[2] Of these three incidents, only once did an individual actually testify the police did not knock and announce; in the other two, the individuals merely stated that they did not know whether the police did so or not. As the district court found, identifying three possible incidents is a far cry from producing evidence sufficient to show that the City had

---

[2] Whittier attempts to show there is a *custom* of serving search warrants without first knocking and announcing. Although Whittier repeatedly refers to the City's "custom or policy," she does not contend that the City has a *policy* specifically instructing officers to ignore the Fourth Amendment.

an official policy or custom of failing to knock and announce.[3] Whittier cannot avoid summary judgment by identifying merely a small handful of instances in which the officers may have failed to knock and announce. Three violations do not a custom make.[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.").

Moreover, ample police testimony demonstrates that it is routine procedure to knock and announce the officers' presence before entering a private home. Thus, even if the officers in this case *did* fail to knock and announce before entering Diotaiuto's home,[5] such action would have been *contrary to* City policy

---

[3] Once the City moved for summary judgment on this issue, the burden shifted to Whittier to produce some evidence indicating that such a policy or custom did exist, thereby creating a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[4] Nor is it clear that any of these three incidents were really even violations. As noted, two of the individuals merely testified they did not know whether the officers knocked and announced before entering, and the third, who testified the officers did not first knock and announce, was, by her own admission, napping when the officers approached her home.

[5] We note that although there is some questionable evidence to the contrary, virtually every police officer on scene testified that the SWAT team knocked and announced before entering Diotaiuto's home.

4

and custom, not *pursuant to* it. As such, the district court did not err in finding that the City was entitled to summary judgment on this issue.[6]

## II.

The district court did not err in granting summary judgment in the City's favor on Whittier's state-law claims.[7] As the district court explained, Diotaiuto incurred his injuries while committing a forcible felony, such that he—or in this case his representative—is statutorily barred from recovering for personal injuries. *See* § 776.085(1), Fla. Stat.[8] The definition of a "forcible felony" under Florida law includes aggravated assault, aggravated battery, and "any other felony which involves the use or threat of physical force or violence against any individual."

---

[6] Whittier also argues the SWAT team's use of the so-called flood technique for entering a home—a technique designed to maximize the element of surprise—itself indicates that the SWAT officers have a custom or policy of not knocking and announcing prior to entering. Whittier provides no record or legal authority for this argument, but apparently relies on the premise that a surprise technique cannot effectively be used in combination with first knocking and announcing. We do not address this speculative argument other than to conclude that it does not entitle Whittier to a reversal of the district court's grant of summary judgment.

[7] Section 768.28(1), Florida Statutes, waives sovereign immunity for torts committed by state or subdivision employees acting within the scope of their official duties. Thus, Whittier is permitted to sue the City for the alleged torts of its employees.

[8] Section 776.085(1) provides:

It shall be a defense to any action for damages for personal injury or wrongful death, or for injury to property, that such action arose from injury sustained by a participant during the commission or attempted commission of a forcible felony. The defense authorized by this section shall be established by evidence that the participant has been convicted of such forcible felony or attempted forcible felony, or by proof of the commission of such crime or attempted crime by a preponderance of the evidence.

5

§ 776.08, Fla. Stat.  Aggravated assault is an assault "[w]ith a deadly weapon

without intent to kill." § 784.021, Fla. Stat.

Here, Diotaiuto committed a forcible felony—aggravated assault—by rasing

the firearm and threatening the police officers with it.  Whittier claims that

Diotaiuto's actions were at least arguably not felonious because he may have been

able to show at trial, had he survived, that he was merely acting out of self-

defense.  This argument relies on the premise that Diotaiuto mistook the police

officers for intruders and, as such, was merely protecting himself in his home.[9]

This contention is unpersuasive.

When the police officers, dressed in traditional SWAT gear that prominently

displayed "POLICE" on the officers' chests, entered Diotaiuto's home and

commanded that he get on the ground, Diotaiuto instead ran through the house

toward his bedroom, where the officers knew Diotaiuto stored his firearms.  The

officers then kicked down the door and entered Diotaiuto's bedroom, again

yelling, "Police!"  Even assuming that the officers did *not* identify themselves

before entering the house and that Diotaiuto could *not* tell that the men were

---

[9] Under Florida law, individuals are not permitted to resist an arrest, even an illegal arrest, with violence. *Lowery v. State*, 356 So. 2d 1325, 1326 (Fla. 4th DCA 1978).  Thus, any theory of self defense must rely on the contention that Diotaiuto did not know the officers were, in fact, police officers.

police officers from their distinctive SWAT garb labeled "POLICE," Diotaiuto certainly knew the men were police officers when they screamed "Police!" within the close confines of Diotaiuto's bedroom. Thus, Diotaiuto's decision to nevertheless raise and point his gun at the officers constituted not an act of self-defense, as Whittier claims, but rather a forcible felony against the police officers. As such, the district court did not err in granting summary judgment in the City's favor. Even construing the evidence in the light most favorable to Whittier, there is simply not enough for her to avoid summary judgment.

**AFFIRMED.**