**1312**

Emily SCHWEITZER, Plaintiff,

v.

COMENITY BANK, Defendant.

CASE NO. 9:15–cv–80665–DMM

United States District Court,
S.D. Florida.

Signed January 27, 2016

Filed January 28, 2016

Chad Jonathan Robinson, Marc Aaron Wites, Wites & Kapetan, PA, Lighthouse Point, FL, for Plaintiff.

Benjamin W. Raslavich, Dale Thomas Golden, Golden Scaz Gagain, PLLC, Tampa, FL, for Defendant.

## *ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT*

DONALD M. MIDDLEBROOKS, UNITED STATES DISTRICT COURT

THIS CAUSE comes before the Court on cross-motions for summary judgment. (DE 24 and 50). The motions are fully briefed and the Parties have submitted their Joint Pretrial Stipulation (DE 75). For reasons stated below, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

### BACKGROUND [1]

Plaintiff Emily Schweitzer is a citizen of Florida and a resident of Palm Beach County, Florida. (Stip. ¶ 5(b)). Defendant Comenity Bank is a Delaware state chartered bank with its principal place of business in Wilmington, Delaware. (*Id.* at ¶ 5(c)). Defendant issues various branded

---

1. The Parties submitted their Joint Pretrial Stipulation (DE 75, "Stip.") after they submitted their motions for summary judgment. The issues briefed in their motions for summary judgment have been somewhat narrowed in light of their Joint Pretrial Stipulation. The facts included in the Background section are agreed-upon facts listed in their Joint Pretrial Stipulation. (*Id.* at 2–4).

credit card accounts, including Victoria's Secret. (*Id.* at ¶ 5(d)).

On May 25, 2012, Plaintiff applied and was approved for a Victoria's Secret credit card account at a Victoria's Secret store in Boynton Beach, Florida. (*Id.* at ¶ 5(e)). Defendant is the issuer and lender for this account. (*Id.*). Plaintiff provided to Defendant a telephone number when she opened her account to obtain her Victoria's Secret credit card. (*Id.* at ¶ 5(h)).

Defendant placed numerous phone calls to and left voicemails on Plaintiff's cell phone between May 13, 2013 and March 19, 2015. (DE 24–3 at 3–10). Defendant used telephone equipment that falls within the purview of the Telephone Consumer Protection Act ("TCPA"), 28 U.S.C. § 227, to place those calls. (Stip. at ¶ 5(f)). At the time Defendant placed the calls, Defendant knew that equipment used to place the calls fell within the purview of the TCPA. (*Id.* at ¶ 5(g)).

On May 27, 2013, Plaintiff advised Defendant that the telephone number provided when she opened her account was a cell phone number. (*Id.* at ¶ 5(i)). On October 13, 2014, Plaintiff engaged in a telephone conversation with Defendant, in which Plaintiff said the following to Defendant:

> unfortunately I can't afford to pay it right now and um **if you guys can not call me like in the morning and during the work day** because I'm working and I can't really be talking about these things while I am work. My phone is ringing off the hook with you guys calling me.

(DE 49–1 at ¶ 9) (Pl. Declaration). *See also* (*Id.* at 5(1)). After October 13, 2014, Defendant called Plaintiff at least 255 times. (*Id.* at ¶ 5(m)).

Plaintiff filed this action on May 27, 2015. (DE 1). On June 30, 2015, an Amended Complaint was filed, alleging a claim under the TCPA and the Florida Consumer Collection Practices Act ("FCCPA"). (DE 10). On September 8, 2015, a partial final judgment was entered on Plaintiff's FCCPA claim. (DE 19). Plaintiff's remaining claim is based on Defendant's calls to her cell phone after October 13, 2014.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come

forward with "specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587, 106 S.Ct. 1348 (citing Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the nonmoving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

## DISCUSSION

Defendant moves for summary judgment, arguing that Plaintiff provided Defendant with consent to call her and never revoked that consent. Thus, Defendant contends Plaintiff cannot demonstrate a violation under the TCPA.[2] Plaintiff moves for summary judgment, arguing that Defendant never obtained Plaintiff's consent to call her and, even assuming consent was provided, Plaintiff revoked that consent on October 13, 2014.

**Telephone Consumer Protection Act.** The provision of the TCPA applicable to Plaintiff's case is 47 U.S.C. § 227(b)(1)(A)(iii), which provides:

> [i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

. . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii). The remedy for a violation of this provision is "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). Plaintiff is also seeking treble damages, which are available for knowing or willful violations. *Id.* § 227(b)(3).

**Consent.** Through their motions for summary judgment, the Parties dispute whether Plaintiff provided to Defendant consent to be called on her cell phone. However, the Parties' Joint Pretrial Stipulation reveals that this issue in no longer disputed. Under the statements of fact which remain to be litigated and the statement of issues of law which remain for determination by the Court, there is nothing about whether Plaintiff provided consent to Defendant to call her cell phone. (*Id.* at 4–5). The only issues concern whether Plaintiff effectively revoked her consent and whether Plaintiff is entitled to treble damages. (*Id.*).[3] Accordingly, the

---

**2.** Defendant also argues that the Credit Card Agreement between Plaintiff and Defendant limits the manner in which Plaintiff can revoke consent to be called—that it must be revoked in writing. The Court need not address this issue. Even assuming that Plaintiff could revoke her consent to be called orally,

as explained below, Plaintiff did not revoke consent.

**3.** In Plaintiff's Statement of the Case, contained within the Joint Pretrial Stipulation, Plaintiff provides, "Even though Plaintiff revoked consent to call her cellular telephone. . . ." (DE 75 at 1). This statement

Court finds that Plaintiff provided consent to Defendant to call her cell phone.

■ **Revocation of Consent.** Plaintiff contends that she revoked her consent to be called on October 13, 2014 during a phone call with Defendant. The Parties have submitted a recording of the October 13, 2014 phone call (DE 43), as well as a transcript of the call (DE 49–1 at ¶ 9). The Parties do not dispute the contents of the recorded phone call but they dispute the meaning of Plaintiff's statements to Defendant during that call.[4]

■ Case law is clear that a consumer may revoke her consent to be called. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir.2014). The Eleventh Circuit determined that "the TCPA's silence regarding the means of providing or revoking consent [indicates] that Congress sought to incorporate 'the common law concept of consent.'" *Id.* at 1255. *See also id.* ("one can infer that Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation"). The Eleventh Circuit also cited to the Restatement (Second) of Torts as an example of the common law meaning of revoking consent—"'consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct.'" *Id.* at

1253 (quoting Restatement (Second) of Torts § 892A, cmt. i (1979)).[5]

On the one hand, Plaintiff argues that she "plainly told Comenity on October 13, 2014 to stop making calls to her cellular phone." (DE 50 at 7). *See also* (*Id.*) ("it was clear that Plaintiff was asking that Defendant stop calling her"); (*Id.* at 8) (describing instruction as "a request to stop the phone calls"). On the other hand, Plaintiff seeks damages only for 178 calls placed to Plaintiff's cell phone "during the mornings and work days." (*Id.* at 11–12). Plaintiff submitted a declaration in support of her Motion for Summary Judgment in which she averred the following:

> During the time period of October 13, 2014 to March 19, 2015, Comenity initiated 258 calls to my cellular telephone using an automated dialer. Of these phone calls, 178 calls were initiated to my cell phone during morning hours Monday though Sunday (*i.e.*, between 12:00 a.m. and 12:00 p.m.), and during the work day Monday through Friday (i.e., between 8:30 a.m. and 5:00 p.m.) (the "Violative Calls").

(DE 49–1 at ¶ 16). It is unclear whether Plaintiff contends her statements to Defendant on October 13, 2014 were a request to stop all calls or only calls during the mornings and work days. As discussed below, Plaintiff's statements—considered as either a request to stop all calls or only calls during certain times—were ineffective to revoke consent.[6]

---

implies that Plaintiff provided consent to be called to Defendant.

**4.** *See* (DE 24 at 16) ("[T]he undisputed evidence demonstrates that Plaintiff expressly consented to receiving the calls at issue and never revoked consent...."); (DE 50 at 5) ("[T]he undisputed material facts establish that Plaintiff effectively revoked her consent to receive calls from Defendant initiated via an ATDS to Plaintiff's cellular phone.").

**5.** In her Motion for Summary Judgment, Plaintiff relies on the Eleventh Circuit's citation to the Restatement (Second) of Tort's

explanation of when consent is terminated, *i.e.*, revoked. (DE 50 at 2–3).

**6.** Through her Motion for Summary Judgment, Plaintiff claims she asked Defendant on March 19, 2015, "can you just please stop calling," after which she did not receive any further calls from Defendant. (DE 50 at 8). She contends that her instructions during the October 13, 2014 and March 19, 2015 calls are "virtually identical instructions." (*Id.*) ("There is no material difference between Ms. Schweitzer's March 19, 2015 and October 13, 2014 instructions with the exception that in October Ms. Schweitzer asked Defendant to

To the extent Plaintiff contends she revoked her consent for all calls, Plaintiff's statement to Defendant on October 13, 2014 expressly did not attempt to stop all calls from Defendant. Plaintiff contends Defendant knew, as a result of the October 13, 2014 call, that Plaintiff did not wish to receive further calls. In support, Plaintiff cites to the deposition of certain of Defendant's employees. (DE 50 at 7, citing Plaintiff's Statement of Facts at ¶¶ 22–24). The testimony cited by Plaintiff, however, does not show that Defendant knew Plaintiff wanted no further calls. Rather, Defendant's employees testified that they knew Plaintiff requested not to be called during the mornings and the work day. *See* Plaintiff's Reply (DE 71 at 2–4) (citing the relied-upon deposition testimony and describing that each witness understood that, based on the October 13, 2014 call, Plaintiff asked not to be called during certain times or during the mornings and work day). Based on Plaintiff's undisputed statements during the October 13, 2014 call and reviewing the cited deposition testimony, I find that Defendant did not know

and should not have had reason to know that Plaintiff wanted no further calls.

To the extent Plaintiff contends she revoked her consent for calls "during the mornings and the work day," Plaintiff did not define or specify the parameters of the times she did not want to be called. As reflected by the need for Plaintiff to include her work day hours through declaration, Plaintiff did not inform Defendant during the October 13, 2014 call of the hours of her work day.[7] Thus, without the information necessary to determine when Plaintiff did not wish to be called, Defendant was unaware of the terms of the purported limited revocation.[8] Thus, applying the common law concept of revocation, no reasonable jury could find that Plaintiff revoked consent to be called on October 13, 2014.

Additionally, in a 2015 ruling, the Federal Communications Commission ("FCC")[9] issued the following as to revocation of consent:

We, therefore, find that the consumer may revoke his or her consent in any

stop calling in the morning and during the work hours (and that in October Ms. Schweitzer was clearly upset and frustrated because, as she explained, 'my phone's ringing off the hook with you guys calling me.')").

7. Plaintiff, through declaration, does not expressly state her work day hours, but rather states "during the work day Monday through Friday (i.e., between 8:30 a.m. and 5:00 p.m.)." According to Plaintiff's Reply in support of her Motion for Summary Judgment, this statement was an attempt to "place[] in the record evidence that her workday includes the hours of Monday through Friday from 8:30 a.m. to 5:00 p.m." (DE 71 at 6–7). The need to place such evidence in the record is contrary to Plaintiff's contention that Defendant knew what Plaintiff was demanding when she requested that Defendant not call her "in the mornings and during the work day."

8. As to Plaintiff's request not to be called in the mornings, Plaintiff did not define morn-

ings. One reasonable interpretation of mornings is 12:00 a.m. to 12:00 p.m., which is how Plaintiff defines morning in her section on damages. However, even assuming mornings is between 12:00 a.m. and 12:00 p.m., time is relative to each person and her location in the world. Someone's location, and time zone, may change due to travel. And certainly, the caller's time zone may be different than the called party. Attempting to revoke consent to being called for certain times has the tendency to present logistical and technical challenges to callers and present evidentiary difficulties for those attempting to recover under the TCPA.

9. "Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1117 (11th Cir. 2014) (citing 40 U.S.C. § 227(b)(2)).

reasonable manner that *clearly express-es his or her desire not to receive further calls,* and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept.

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30 F.C.C.R. 7961, 2015 WL 4387780 at ¶ 70 (F.C.C. July 10, 2015) ("2015 FCC Ruling") (emphasis added). It is unclear whether the 2015 FCC Ruling applies to this case, as it was issued after the purported revocation and after all the phone calls subject to this litigation.[10] *See Osorio* at 1256, ("This guidance is not dispositive of the present case because the FCC issued its ruling after the calls in question...."). However, to the extent the 2015 FCC Ruling is not binding, I find the 2015 FCC Ruling to be persuasive authority.

Applying the standard articulated in the 2015 FCC Ruling, Plaintiff has not demonstrated she "clearly express[ed] ... her desire not to receive further calls" where she attempted to limit the timing of the calls. After consent to receive phone calls is provided to a caller under the TCPA, the recipient (or called party) must revoke the consent clearly. A called party who asks not to be called "during lunch" or "during my pedicures on Saturday" is not asking not to be called.[11] Rather, she is asking not to be called at inconvenient times, without specifying what those times are. Here, Plaintiff did not clearly convey to Defendant a desire not to receive further calls and thus did not effectively revoke her consent under the FCC's standard. Accordingly, Defendant's calls after

October 13, 2014 were not in violation of the TCPA.

## CONCLUSION

For reasons stated above, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

**IT IS ORDERED AND ADJUDGED** that

(1) Defendant's Motion for Summary Judgment (DE 24) is **GRANTED.**

(2) Plaintiff's Motion for Summary Judgment (DE 50) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Florida, this day of *27* January, 2016.

---

10. Both Parties cite to the 2015 FCC Ruling in their motions for summary judgment. (DE 50 at 3); (DE 24 at 24). Both also agree courts are bound by the FCC'S intepretation of the TCPA. (DE 24 at 12–13); (DE 50 at 3 n.2); (DE 62 at 2).

11. *See Cunningham v. Credit Management, L.P.,* No. 09–cv–1497, 2010 WL 3791104, at *5 (N.D.Tex.2010) (finding plaintiff's statement that calls to his cell phone are inconvenient is insufficient to revoke his prior express consent under TCPA).