[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10180

Non-Argument Calendar

_____

LANCE SPIKES,
MARJORIE T. HOLLMAN,
MICHAEL CORTES,

Plaintiffs-Appellees,

BRIAN HOROWITZ,
CAMERON N. MAY,
individually,

Plaintiffs,

*versus*

SCHUMACHER AUTO GROUP INC.,
a Florida Corporation,
CHARLES A. SCHUMACHER,
individually,

AMANDA SCHUMACHER,

individually,

Defendants-Appellants.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-81223-RS

————————————

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Jason and Amanda Schumacher—and their company, Schumacher Auto Group Inc.[1]—appeal the judgment for plaintiffs Lance Spikes, Marjorie Hollman, and Michael Cortes on their Fair Labor Standards Act claims. We affirm in part and vacate and remand in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Spikes, Hollman, and Cortes worked for Schumacher, which operated car dealerships in West Palm Beach. The three worked as "sales associates" at Schumacher's business

---

[1] We'll refer to them collectively as "Schumacher."

development center, a call center located in a building next door to the dealerships. Although the business development center had a separate building, the sales associates there were on the same payroll system as other Schumacher employees. For performance assessment purposes, Schumacher ranked business development center sales associates in the same sales group as dealership salesmen.

Working at the business development center involved talking with potential customers over the phone and convincing them to make an appointment to see cars on the lot next door, though the sales associates would not give specific information about trade-in values or whether Schumacher would agree to sell a car below sticker price. Business development center sales associates would also meet regularly with showroom salesmen at the dealerships to discuss upcoming appointments. Jason and Amanda Schumacher "control[led] and direct[ed]" the business development center operations; they made management decisions over both the business development center and the individual car dealerships.

Spikes, Hollman, and Cortes were paid through a combination of a salary—some $2,000 per month—plus incentive payments for each appointment they booked and additional payments for each appointment that led to an auto sale. When Hollman was hired by Schumacher, she received an employee handbook that included a description of her pay plan: her fixed salary was "based on a 40-hour workweek," and anything "over [would] be overtime." Hollman testified that, based on this description, she understood

her fixed salary to be compensation for only forty working hours each week.

Spikes, Hollman, and Cortes resigned from their business development center jobs in 2019. Then, in July 2021, they sued Schumacher under the Fair Labor Standards Act.[2] They alleged that Schumacher violated the Act by paying them less than one-and-one-half times their regular rate of pay for the overtime hours they worked. *See* 29 U.S.C. § 207. In response, Schumacher argued that the plaintiffs were exempt from the Act's overtime pay requirements because they were either (1) "sales[persons] . . . primarily engaged in selling . . . automobiles," 29 U.S.C. § 213(b)(10)(A); or (2) "employee[s] of a retail or service establishment" whose regular rate of pay exceeded one-and-one-half times the federal minimum wage and whose salaries were more than half commission-based, *id*. § 207(i). Schumacher also argued that the plaintiffs were exempt from the overtime pay requirements because they were paid under a fluctuating workweek method, which provides a fixed salary for workweeks of variable hours. *See* 29 C.F.R. § 778.114. After discovery ended, each side moved for summary judgment.

The district court granted summary judgment in the plaintiffs' favor. It reasoned that, because the plaintiffs' primary responsibilities involved convincing customers to make appointments at

---

[2] Two other plaintiffs settled and were dismissed before the remaining plaintiffs sought summary judgment.

the car lot—rather than convincing them directly to purchase cars—they weren't automobile salespersons under section 213(b)(10)(A). And because the plaintiffs worked in the business development center, a non-sales building separate from the dealerships, the district court concluded that they didn't work in a "retail or service establishment" under section 207(i). Finally, the district court explained, the undisputed evidence showed Hollman hadn't clearly agreed to be paid under the fluctuating workweek method.

Based on the summary judgment for the plaintiffs, the parties agreed on the damages amount, and the district court entered a final judgment for Spikes, Cortes, and Hollman. Schumacher timely appealed.

## STANDARD OF REVIEW

We review de novo an order granting summary judgment. *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Like the district court, we do not "weigh the evidence and determine the truth of the matter" but "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is improper if "there are genuine [and material] factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. "If the evidence is merely colorable, or

is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## DISCUSSION

The Fair Labor Standards Act requires covered employers to pay covered employees overtime pay—calculated at one-and-one-half times the employee's regular pay rate—when an employee works more than forty hours in one week. *See* 29 U.S.C. § 207(a). But some employees are exempt from these requirements. Here, Schumacher argues that genuine disputes of fact exist as to whether the plaintiffs were subject to two such exemptions: the automobile salesman exemption under 29 U.S.C. section 213(b)(10)(A) and the retail sales exemption under section 207(i). It also contends that a genuine dispute exists as to whether plaintiff Hollman was subject to the "fluctuating workweek method"—an alternative pay arrangement for employees who work variable hours for a fixed salary—which allows employers to compensate overtime hours at only one-half times the regular rate. *See* 29 C.F.R. § 778.114(a). We address each issue in turn.

### Automobile Salesman Exemption

Schumacher argues that it didn't have to pay its business development center sales associates an increased overtime rate because they qualified as "sales[persons]" who were "primarily engaged in selling . . . automobiles" at an "establishment primarily engaged in the business of selling such vehicles . . . to ultimate purchasers." 19 U.S.C. § 213(b)(10)(A). The district court granted summary judgment to the plaintiffs because it found, as a matter

of law, that they were not "sales[persons]" "engaged in selling" but merely enticed potential customers to make appointments at Schumacher's car lots.

The Fair Labor Standards Act defines the word "sell[ing]"—somewhat circularly—to mean a "sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). There is no dispute that the plaintiffs weren't "primarily engaged in" the first five of these activities. *See id.* § 213(b)(10)(A).[3] And, as to the sixth, the Supreme Court has explained that the phrase "other disposition" "is most reasonably interpreted as including those arrangements that are tantamount, in a particular industry, to a paradigmatic sale of a commodity." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 164 (2012).

Shumacher relies on *Encino Motors, LLC v. Navarro*, 138 S. Ct. 1134 (2018), to argue that a salesperson need not actually sell cars to be exempt from the Act's overtime requirements, so long as he or she is "integrally involved" in the servicing process. *Encino Motors* held that car dealership "service advisors" who sold parts, suggested services, and monitored the progress of mechanic services were exempt from the Act's overtime requirements because they

---

[3] Shumacher argues—and the plaintiffs dispute—that sales associates in the business development center occasionally processed credit card information for customers. But even if they did, and even if this qualified as an "exchange" under section 203(k), there's no evidence in the record that the plaintiffs were *primarily* engaged in such activity, as is essential for the definition of an exempt salesman under section 213(b)(10)(A).

were "sales[persons] . . . primarily engaged in . . . servicing automobiles." *Id.* at 1139–40 (quoting 29 U.S.C. § 213(b)(10)(A)). The Court explained that because "servicing" vehicles means more than "spen[ding] . . . time under the hood," the statute "must include some individuals who do not physically repair automobiles themselves but who are integrally involved in the servicing process." *Id.* at 1141; *cf. Brennan v. Deel Motors, Inc.*, 475 F.2d 1095, 1096–97 (5th Cir. 1973) (holding that car repair shop employees who "diagnose[d] each customer's problem with his automobile," "monitor[ed] the work while in progress," and "determine[d] whether a satisfactory job ha[d] been done" were engaged in servicing vehicles under section 213(b)(10)(A)).

The plaintiffs, Schumacher contends, were an integral part of a sales team that involved multiple people, from showroom salesmen (who lead customers around the lot) to sales managers (who finalize the sales terms), to finance managers (who secure credit for customers). Because no one person along the line completes every element of a vehicle sale, Schumacher argues that the sales associates in the business development center were just as much salespersons as a showroom salesman.

But there is an important difference between the concepts of "selling" and "servicing" that limits the analogy between *Encino Motors* and the sales associates at Schumacher's business development center. Section 213(b)(10)(A) doesn't apply to every person important to making sales happen, but to those "primarily engaged" in "those arrangements that are tantamount, in a particular

industry, to a paradigmatic sale of a commodity." *SmithKline Beecham Corp.*, 567 U.S. at 164. A janitor may be "integral" to the sales process in the sense that customers are more likely to buy cars from a clean showroom. But the janitor isn't engaged in the exchange of a commodity for money. What matters is an employee's participation in the process of an *exchange*, not to the success of a company in a general sense. To the extent the plaintiffs here "sold" anything, they were selling *appointments*, not vehicles. And an appointment—while it may precede a sale—is not itself an essential component of the commercial *exchange* of a vehicle in the way that ordering parts and supervising mechanics are essential components of *servicing* vehicles. That's why the plaintiffs were entitled to summary judgment on the automobile salesman exemption issue.

*Retail Sales Exemption*

The Act provides for an additional exemption from overtime requirements for employees (not just salespersons) of a "retail or service establishment" whose regular pay exceeds one-and-one-half times the minimum wage and whose monthly income is more than half commission-based. 29 U.S.C. § 207(i). The district court determined, as a matter of law, the business development center was a not a "retail establishment" because it was physically separate from the other buildings where Schumacher sold cars.

Each "distinct physical place of business" that a corporation operates will constitute a separate "establishment" within the Act's overtime-pay exemptions. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1157 (11th Cir. 2008) (quoting

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945)). This under-standing is also reflected in the relevant regulations. *See* 29 C.F.R. § 779.23 ("[T]he term establishment . . . refers to a 'distinct physical place of business' rather than to 'an entire business or enterprise' which may include several places of business.").

But we have held that section 779.23 must be read in har-mony with a related regulation acknowledging "two or more phys-ically separated portions of a business though located on the same premises" may "constitute more than one establishment for pur-poses of exemptions." *Id.* § 779.305; *see also Alvarez Perez*, 515 F.3d at 1158 (explaining that section 779.305 lays out "three require-ments in the conjunctive" to find the existence of separate estab-lishments). Under section 779.305, separate establishments are units of business that (1) are physically separated; (2) are "function-ally operated as . . . separate unit[s] having separate records, and separate bookkeeping"; and (3) have "no interchange of employees between the units," except "an employee of one unit" might "oc-casionally . . . render some help in the other units." *Alvarez Perez*, 515 F.3d at 1157–58 (quoting 29 C.F.R. § 779.305). Where one of these elements is not met, two units of same business will be con-sidered one "establishment" for the purposes of exemptions in the Act. *Id.* at 1158 (citing *Montalvo v. Tower Life Bld.*, 426 F.2d 1135, 1145 (5th Cir. 1970) (explaining that "the concept of 'functional unity' . . . is normally invoked to show that two or more places of business which are physically separated should be considered a sin-gle establishment")).

Here, there is a genuine dispute of material fact about the second of these three elements. Viewed in the light most favorable to Schumacher, the evidence shows that sales associates in the business development center (1) were on the same payroll system as other Schumacher employees, with a unified accounting department; (2) would meet with showroom salesmen to discuss upcoming customer appointments; (3) were ranked in a group with dealership salesmen by revenue produced for Schumacher; and (4) were "control[led] and direct[ed]" by Charles and Amanda Schumacher, who "regularly appeared" at the business development center and made management decisions over both the business development center and the individual car dealerships. This evidence would allow a reasonable factfinder to conclude, under the test we adopted in *Alvarez Perez*, that the business development center was not a separate establishment from the dealerships. *Cf.* 29 C.F.R. § 779.304 (explaining that a "large department store" will constitute a single establishment, even though it "carries a wide variety of lines which ordinarily are segregated or departmentalized not only as to location within the store, but also as to operation and records," so long as the "departments are operated as integral parts of a unit").

*Fluctuating Workweek Method*

Schumacher's final argument on appeal is that the record shows a genuine dispute of material fact whether Hollman's overtime payments could be calculated according to a fluctuating workweek method.

Although the Fair Labor Standards Act requires time-and-one-half overtime pay for non-exempt employees, that rate is calculated differently for employees working variable hours for a fixed regular rate of pay.  *See* 29 U.S.C. § 778.114(a).  "For workers with a fixed salary and variable weekly hours, the employer can use the fluctuating workweek method to determine overtime pay."  *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1322 (11th Cir. 2021).  Because a fixed salary already covers the regular rate of pay for an employee's overtime hours, the employer using the fluctuating workweek method "need only pay for overtime hours at a rate of one-half times the employee's regular rate—not at one and one-half times."  *Id.*

To rely on the fluctuating workweek method, an employer must show that both it and the employee "have a clear and mutual understanding that the [employee's] fixed salary is compensation . . . for the *total hours* worked each workweek regardless of the number of hours."  29 C.F.R. § 778.114(a)(4) (emphasis added).  In other words, if an employee *believes* her salary covers only forty hours per week—not the total hours worked, above or below forty hours—the employer can't use the fluctuating workweek method to avoid paying time-and-one-half overtime pay.  *See Hernandez*, 15 F.4th at 1331 (explaining that a "clear and mutual understanding" is a "requirement[]" for applying the fluctuating workweek method).

The record shows that Hollman had no clear understanding she was being paid according to a fixed rate for variable hours.

When Hollman was hired, she received a pay plan that informed her she would be paid "based on a 40-hour workweek, anything under will be prorated, over will be overtime." Her sworn declaration stated that, based on this pay plan, she understood her salary to cover a forty-hour workweek. Finally, she testified in her deposition that she understood her base pay to cover a forty-hour workweek.

Schumacher argues that Hollman's paystubs—which reflect she was paid the same base pay for working less than forty hours as for weeks when she worked more than forty hours—put her on notice that she was being paid a fixed salary for variable hours. But the paystubs did not show that Hollman's base pay compensated her for *more than* forty hours per week. Instead, they capped her biweekly "hours worked" at eighty. So the paystubs were not evidence that Hollman understood her base pay to comprise her regular payrate for the additional hours.

Finally, Schumacher points to a later part of Hollman's deposition where she stated that her "hourly rate" for damages purposes would be determined by dividing her total compensation by "the number of hours you worked." It argues that this statement describes the fluctuating workweek method and creates a genuine dispute of fact about Hollman's understanding. Not so. Hollman was responding specifically to a question about calculating damages, not her understanding of her terms of employment. Although the two issues are obviously related in the litigation context, an ambiguous statement about the damages calculation is not

enough to create a genuine dispute that Hollman had a *"clear* and mutual understanding" during the course of her employment that she was subject to the fluctuating workweek method. *Hernandez*, 15 F.4th at 1331 (emphasis added); *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (explaining that a "mere scintilla of evidence" is not enough to create a genuine dispute of material fact, as "there must be enough of a showing that the jury could reasonably find" for the non-movant (marks and citation omitted)). Hollman was entitled to summary judgment on this issue.

## CONCLUSION

The district court correctly granted summary judgment in favor of the plaintiffs under the automobile sales exemption to the Fair Labor Standards Act. It also correctly determined that no genuine dispute of fact existed as to Hollman's lack of understanding that her pay was governed by the fluctuating workweek method. But the district court erred in granting the plaintiffs summary judgment as to the retail sales exemption because a genuine dispute exists as to whether the business development center was a separate establishment under the terms of the Act. We vacate the judgment for the plaintiffs to the extent the district court found no genuine dispute of material fact on the retail sales exemption issue, and remand for the district court to consider any other arguments raised by the parties' summary judgment motions as to that exemption.

**JUDGMENT AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.**